Ackerman *v.* Cross.

[ONONDAGA GENERAL TERM, December 22, 1863. *Allen, Morgan, Mullin* and *Bacon,* Justices.]

ACKERMAN and others *vs.* CROSS and others.

Voluntary transfers of personal property, wherever in point of fact the *situs* of the property itself may be, are controlled and regulated by the law of the owner's domicil, and if valid there, to transfer a title, are valid every where else.

A voluntary assignment of property, by a debtor, for the benefit of his creditors, stands in this respect upon the same footing, and the assignees are entitled to assert the same rights as purchasers in any other form from the original owner.

Accordingly *held* that an assignment executed in Canada, where all the parties resided at the time of its execution, and which was valid and effectual by the law of that country, operated to convey property in the state of New York, as against a valid attachment of a creditor of the assignors and a citizen of this state, although the assignment was not acknowledged, filed or recorded here, nor in other respects in conformity with the act of April 13, 1860.

APPEAL by the defendants from a judgment for the plaintiffs, entered on the report of a referee. The action was brought by the plaintiffs, Ackerman and Innes, as general assignees of Curry, McCandlish & Field, to recover for the conversion of nine cases of nutmegs, and sixty-one boxes and cases of tobacco. The assignment under which the plaintiffs derive title, was made at Bellville, Canada West, on the 10th day of June, 1861, where the assignors then resided, and had been doing business as merchants, under the firm

name of Curry, McCandlish & Field. The property in ques-tion was shipped by the said firm, on the last day of May, or the first day of June, from Bellville to the city of New York, for sale. It arrived at Cape Vincent, in this state, on the 4th day of June. On the 11th day of June, while in the custody of the collector of customs at Cape Vincent, one of the assignors made a formal delivery of it to the plaintiffs, as assignees, and it was allowed to remain there in the custody of the collector as the nominal agent and bailee of the plaintiffs, subject to the lien for duties thereon. The defendants are merchants, residing in the city of New York, and being the creditors of the said assignors upon a debt created at said city, on the 12th day of June, 1861, issued an attachment in due form of law, and levied upon the property in question, at Cape Vincent, and thereafter caused the same to be sold on an execution on the judgment in the action. The said assignment was executed conformably to the laws of the province of Canada, but not in conformity to the laws of this state, in any essential particular; it was not acknowledged, filed or recorded in any county clerk's office in this state, nor was a bond given by the assignees, as required by the act of our legislature, passed April 18, 1860, (*Laws of* 1860, *ch.* 348.) The assignees were, at the date of the assignment, and are now, residents of Bellville aforesaid.

The conclusions of law of the referee were as follows: 1. That said assignment was a valid instrument, and was operative to and did pass to the plaintiffs as assignees the property in the goods, the subject of this action then being at Cape Vincent, within this state. 2. That by virtue of said assignment, and the actual delivery of said goods under and in pursuance of the same, the title to the goods so seized and taken by the defendants, vested in the plaintiffs as assignees and upon the trusts of the said assignment. 3. That the plaintiffs are entitled to recover against the defendants the value of the said goods, with interest thereon, amounting in the aggregate to one thousand four hundred

and eighty-eight dollars and twenty-five cents, ($1488.25,) and for that sum with costs of the action he ordered judgment.

*F. W. Hubbard,* for the appellants. I. It may be conceded that the assignment in question is valid, under the laws of Canada, and, by the courts of Canada would be held effectual to vest the title to the assigned property in the assignees, in a controversy between subjects of that province. It may be conceded further that our courts would give it effect in a controversy between Canadian subjects, in which our citizens had no interest. This upon the principle applicable to foreign bankrupt assignments. Such assignments pass no title to property here. (5 *Cranch,* 289. 12 *Wheat.* 213. 3 *Wend.* 538.) Still assignees are permitted to sue in our courts, provided the rights or interests of our citizens are not infringed. (3 *Wend.* 538. *Story on Confl. of Laws,* §§ 420, 421. 1 *Seld.* 327, 341.) On the other hand it must be admitted by the plaintiffs that, tested by the stringent provisions of our statute alone, the assignment cannot stand. (*Sess. L.* 1860, *ch.* 348.) It would be pronounced invalid had it been made by citizens, to assignees residing in this state. None of the essentials of the statute were complied with, and no attempt at compliance; the Canadian statute was alone consulted in drafting it. It was not acknowledged by the assignors, nor was any sufficient schedule of property made. No bond was executed by the assignees, nor was the assignment filed or recorded in any county clerk's office in this state. To sustain this action, the plaintiffs must take the case out of the operation of our statutes.

II. Our statutes cannot be rendered nugatory by force of the rule of the *comity of nations.* It is submitted that our courts will not give effect to a foreign assignment for the benefit of creditors, operating on property situated here, against creditors residing here, when such assignment contravenes the policy of our laws. This assignment comes in direct conflict with the letter and policy of our statutes, and infringes the

interests of the defendants, who are citizens of this state, in respect to the property in litigation. Justice Story, in his Conflict of Laws, § 38, defines the law of comity, and the principle of its operation, as follows: "There is not only no impropriety in the use of the phrase 'comity of nations,' but it is the most appropriate phrase to express the true foundation and extent of the obligations of the laws of one nation within the territories of another. It is derived altogether from the *voluntary consent of the latter*, and is inadmissible, when it is contrary to its *known policy, or prejudicial to its interests*. In the silence of any rule affirming or denying, or restraining the operation of foreign laws, courts of justice will presume the tacit adoption of them by their own government, unless they are repugnant to its policy, or prejudicial to its interest." (*See note* 3 *to* § 38. 13 *Peters*, 519, 589, 597. 1 *Seld.* 340.) The same rule prevails in relation to foreign contracts as foreign laws—neither have any extra territorial operation, *proprio vigore*—their operation depends on the national courtesy alone. (*Story on Confl. of Laws*, § 7. 2 *Kent's Com.* 406. *Hoyt* v. *Thompson*, 1 *Seld.* 340. *Bank of Augusta* v. *Earle*, 13 *Peters*, 568.) This is an universal rule of international law, and is simply the expression of *national sovereignty*. Every nation, in the exercise of its sovereignty, has a right to prescribe its own rules and remedies, pertaining to persons or property, within its territory. The general rule in regard to the owner's domicil, governing the alienation or assignment of personal property, is susceptible of being modified or abrogated, by the exercise of the sovereign power. (*Burrill on Assign.* 362.) It is but another form of expression to say the *lex loci* may be modified or annulled by the *lex fori*. And when there is a conflict, the former must yield. (*Story on Confl. of Laws*, §§ 326, 327. 2 *Kent's Com.* 407.) It is only in cases where there is no such conflict that the laws and contracts made by or in a foreign country, are permitted operation here, in our courts. The statute of 1860 entirely

abrogated the law of comity, in respect to a general assignment of property situated in this state, in a case where our citizens are affected. The simple question is whether the plaintiffs can claim title to the property in question, against the defendants' attachment and execution, tested by the provisions of our assignment law.* The precise question in his case does not seem to have been adjudicated in this state. (*Moore* v. *Willett*, 35 *Barb.* 663.) This case cannot be cited as authority for the plaintiffs. It was the case of an assignment, by a debtor in North Carolina, of a vessel, then on its passage from the West Indies to New York. In contemplation of law, and for the purposes of transfer, it was situated at the place of the owner's domicil. No question of conflict of laws did or could arise. The assignment was doubtless made before our statute of 1860, and being found good in North Carolina, was held good here, because not repugnant to our laws. This case must be considered with reference to its particular facts. The courts say, page 665, "the vessel for which the action is brought, being on the high seas, the assignment would operate on it irrespective of our laws, and the title would pass to the plaintiffs, if the assignment was valid in the place where it was made." The case in 21 *Barb.* 205, (*Tyler* v. *Strong*,) was not a case of a general assignment, but a sale of lumber, situated in Pennsylvania, by a vendor to a vendee residing in this state. One question was, whether there had been an actual delivery of the possession of the lumber, as required by the laws of Pennsylvania. The court held that the law of this state must determine the validity of the contract, upon the principle of the *lex loci contractus*. There was no question of the conflict of laws arising in the case. The rule, as we claim it to be, is well settled in Massachusetts, and recognized in Maine and New Jersey, Louisiana, New Hampshire and Connecticut. (*Zipcey* v.*Thompson*, 1 *Gray*, 243. *Boyd* v. *Rockport S. C. Mills*, 7 *id.* 406. *Ingraham* v. *Geyer*, 13 *Mass.* 146. *Blake* v.*Williams*, 6 *Pick.* 286. *Mevus* v. *Hapgood*, 19 *id.* 105. *Varnum* v. *Camp*, 1 *Green*,

*N. J.* 326. *Fox* v. *Adams,* 5 *Greenleaf,* 245. *Morris* v. *Mumford,* 3 *Mart. Lou. N. S.* 20. 3 *id.* 326. *Lord* v. *Brig Watchman,* 8. *Am. J.* 284. *Olliver* v. *Towner,* 2 *Mart. Lou. R. N. S.* 93. *Burrill on Assign.* 362 to 373. *Tiffany & Bullard, Law of Trusts,* 294. 9 *Conn.* 487. *Story on Confl. of Laws,* 327.) · These authorities sustain the principle that the *lex fori* prevails over the *lex loci,* and that the *lex loci rei sitae* prevails over the rule of the owner's domicil, in a case of personal property, when the rights and interests of the citizens of the country where the controversy arises, are affected. In the case of *Zipcey* v. *Thompson,* (1 *Gray,* 243,) it was held that "An assignment of property, in this commonwealth, made in New York, by an insolvent citizen of that state, to a trustee for the benefit of creditors, giving a preference to certain creditors, also citizens of New York, is ineffectual against an attachment, made in this commonwealth, by a citizen thereof." It was held invalid, because it contravened the policy of the Massachusetts law, forbidding preferences. Because the assignment in question contravenes the letter and policy of our statute, it must be held to be ineffectual to transfer the title to property in this state as against the process of a citizen. The assignment would be held void, had it been made by citizens of this state — to hold it valid, made in a foreign country, would be to give to an alien immunities and rights superior to those granted to our own people — an injustice which our courts ought not to be asked to perpetrate. Besides, it was held in *Bruce* v. *Anderson,* (*Stewart's Lower Canada Rep.* 127, *cited* 2 *Kent's Com.* 9*th ed.* 527, *note a,*) that an English commission of bankruptcy operates as a voluntary assignment by the bankrupt, but rights and privileges acquired by the provincial creditors are not affected by the commission or assignment. It is submitted that our courts should apply the same rules to an assignment in Canada, affecting property here, and aid the rights and interests of our citizens. The case of *Sortwell* v. *Jewett,* (9 *Ohio,* 180,) does not militate against the doctrine for

which we contend. The head note of that case is, "An assignment made by an insolvent debtor residing abroad, of land in Ohio, will not be superseded by a subsequent foreign attachment." The case was a bill of interpleader to distribute surplus on sale of mortgaged premises. The mortgagor lived in New York, where he made a general assignment for the benefit of creditors, and conveyed the mortgaged premises by a separate deed for the purposes of the trust, after which a creditor of the grantor in Ohio seized the land under a foreign attachment. The question was, whether the land belonged to the trust. It was held that it did, because the deed was made conformable to, and the trust did not conflict with any positive law of Ohio. Ch. J. Lane, in his opinion, says, "the natural right of the owner of property to dispose of it at his pleasure, depends on no locality, and is subject to no restrictions *except that of conformity with the laws of the state (where the property is situated.) A compliance with these forms should avail equally the stranger as the citizen.*" In alluding to the laws of Maine and Massachusetts, he says "most or perhaps all the cases show the assignment to be void by the law of the jurisdiction in which the *property is situated.* Yet an effort is made to place their conclusion upon some other basis than this; upon some rule of policy, that a state should prefer or preserve the rights of its own citizens, and exempt them from the laws and acts of citizens of other states. This harsh discrimination the chief justice condemns, but he does not dissent from the decisions in the cases referred to, so far as they held a foreign voluntary assignment void, which conflicts with the positive laws of the state where the assigned property is situated. This is the position assumed by us in this case. The chief justice further says, "I need not examine by what law personalty is regulated, when held by a stranger; the present suit relates to *land only.* Its owner might lawfully dispose of it, although it lies abroad. It is only necessary to see if he adopted the forms required in our state, and whether the object he sought would be jus-

tified if undertaken by one of our own citizens." The case of *Frazier* v. *Fredericks*, (4 *Zabriskie, N. J.* 162,) is not against us. The head note is; "a voluntary assignment for the benefit of creditors, valid where made, is sufficient to vest extra territorial property in the assignee, as against a subsequent attaching creditor, of the state where the property is situated, *provided there be nothing in such assignment contrary to good morals or repugnant to the policy and positive institutions of the last mentioned state.* The non-observance of statute direction of such state is immaterial." The assignment was made in Pennsylvania, embracing property in New Jersey, held good in the latter state, *because it did not conflict with its law or policy.*

III. The taking possession of the property at Cape Vincent cannot help the plaintiffs' case. They derive all the title possessed under the assignment. They are trustees, and bring this action as such. This action must stand or fall with the assignment. Outside of the trust they have no title. If the assignment had been made in this state by a citizen, and was invalid, the property could have been seized under execution at the suit of a creditor, in the hands of the assignee. The property was not brought into this state for a temporary purpose. Nor was it in transit to a destination beyond the limits of the state. It was shipped from Bellville, in Canada, to the city of New York, for the purpose of sale there, on account of the debtors of the defendants, the plaintiffs' assignors. It is submitted that it is enough that the property is here, when the assignment is made, and that when an appeal is made to our courts, the law of our courts must decide the controversy, irrespective of the rule of domicil.

IV. The statute of 1860 was intended to embrace all the estate of the assignor, in this state, irrespective of his residence. (*Laws of* 1860, *ch.* 348, *p.* 594, § 1, *sub.* 6.) No assignment of property here can convey the title, against creditors, except the conditions of the law are fully complied with. In 2 *Kent's Com.*, (*406,) the chancellor says, "It may now

be considered as part of the settled jurisprudence of this country, that personal property, as against creditors, has locality, and the *lex loci rei sitae* prevails, or the law of the domicile, with regard to the rule of preferences, in the case of insolvent estates. (*Johnson* v. *Hunt,* 23 *Wend.* 94, *and cases cited.*) The case of *Holmes* v. *Remsen,* (4 *John. Ch.* 460,) is also reported in 20 *John.* 229, overruled as to the question of the locality of personal property.

V. The act also plainly contemplates a resident assignee and assignor, within the jurisdiction of our courts, and amenable to process. It is questionable whether a non-resident assignor can make a valid assignment of property in this state. (*See* §§ 3, 4, 5, *Laws of* 1860, *ch.* 348.) These rights of creditors to compel an accounting would be lost if an alien or non-resident assignee was permitted.

VI. The assignment being void, it follows that the learned referee erred in ordering judgment for the plaintiff. But should the court be of the contrary opinion, still they should order a new trial. There being a fund in this state out of which the defendants' debt ought to be paid, even under the. assignment, the court will lay hold of it and see justice done to them, at the same time protecting all other creditors and the plaintiffs, and will not drive the defendants out of court remediless, and compel them to seek relief in a foreign court. (*See opinion Mullin, J.* 31 *Barb.* 407, 412.)

*L. H. Brown,* for the respondents. I. The case declares the proofs made on the trial were sufficient to sustain every finding of fact found by the referee. Therefore the laws of Canada being matters of proof, and proved as facts, although the same are not incorporated in the evidence contained in the case, the finding of the referee that the assignment was valid under the laws of Canada, cannot now be questioned. The assignment is fair on its face—is found to have been made in good faith—without intent to defraud creditors; made no preferences, but directed an equal pro rata distribu-

tion of *all* the copartnership property of the firm composed of the assignors, and all the property of each individual member thereof, amongst the firm creditors. All the property was immediately taken possession of by the assignees, and all except that which is the subject of this action, converted into money for the purposes of the trust. The plaintiffs, under the assignment, had taken actual possession of the property in question, and therefrom the defendants took the same and converted it. Such construction must be given to the assignment as will maintain its validity, if it can fairly be done. (*Kellogg* v. *Slauson,* 1 *Kern.* 302.) The law never gives to an instrument an unlawful meaning by implication, nor will it by implication raise an unlawful trust. (*Mann* v. *Witbeck,* 17 *Barb.* 388.)

II. The assignment being valid by the laws of Canada, a contract to be executed there, and between citizens of that state, although not in accordance with the statutes of this state, and illegal here, and such as is prohibited by our statute to be executed here, will be held valid and effective here, as it is not proven that the parties thereto intended by, or under it, to violate the laws or policy of this state, or that they knew that by the laws or policy of this state it was illegal and invalid. *McIntyre* v. *Parks,* (3 *Metcalf,* 207.) "If a sale of lottery tickets is made in another state, where such sale is lawful, to a citizen of this state, it is a lawful transaction, although the seller knows that the purchaser buys them for the purpose of selling them in this state, where *such sale is prohibited by statute,* and the seller may maintain an action, in the courts of this state, to recover possession of real estate mortgaged to the buyer, and by him assigned to the seller to secure payment of a note given for such tickets." *The Bank of Chillicothe* v. *Dodge,* (8 *Barb.* 233,) "Ignorance of a foreign law is ignorance of a fact." The plaintiff, a foreign corporation, having in Ohio advanced to the defendant, a resident of this state, money upon a draft issued in this state in violation of our statute, was allowed

to recover it back as paid under a mistake of fact, the plaintiff not knowing our law, making it illegal, and the defendant being a resident chargeable with knowledge of it. *The Merchants' Bank of New York* v. *Spalding*, (5 *Seld.* 53,) "Citizens of another state, making contracts in that state to be performed there, are not chargeable with a knowledge of our laws." Denio, J. at pages 62 and 63, after citing cases where contracts made in a foreign state with a general design, or by persons conspiring to violate our laws, would be held invalid here, refers to 3 *Metcalf*, 207, above cited, as the rule established in Massachusetts, and says, "and we are of opinion that when the act to be done in another state, the knowledge of which is sought to affect the contract, is simply a violation of a positive law, having in it nothing of an immoral nature, and when it is not shown that the parties were cognizant that the act was forbidden by the local law of such other state—and they therefore not chargeable with a confederacy to defeat those laws—the contract is valid and should be enforced in such other state." The whole court agreed. *Thatcher* v. *Harris*, (1 *Kern.* 437,) in an action brought in this state to recover pay for lottery tickets, held that although all contracts and dealing in lotteries or lottery tickets is prohibited by our constitution and laws within this state, yet such a contract, when made and to be performed in another state where legally authorized, would be upheld by the courts of this state upon principles of comity, if not contrary to the principles of morality or public policy, although such contract would be illegal in this state. (*See also The Commonwealth of Kentucky* v. *Bassford*, 6 *Hill*, 526.) The assignment in question was a contract to be executed in Canada, as the plaintiffs insist; every thing affected by it and every thing to be done in execution of it was there and to be done there, save the sale of the parcel of property in question which was in transit through this state, or rather in custody of the United States government. We insist, therefore, that had the plaintiffs, before taking possession of

the property, even brought suit to recover its possession from the custodian, any stranger or the defendants claiming it the same as now, the assignment would, upon the principles and cases cited, be held valid as a transfer of title to the property. The present position is a still stronger one.

III. The common law prevails in Canada, except as modified by statute. The common law prevails here also, as to these assignments, except as modified by statutes of this state. (*See provisions of old Constitution of New York, 5th ed.* 1 *R. S. p.* 32, § 35; *Id. p.* 46, § 13; *Id. p.* 52, § 17; *Constitution of* 1846.) By the statute of New York voluntary assignments made in good faith in trust to pay debts have not been and are not prohibited. Assignments made with intent to hinder, delay or defraud creditors, are declared void. (3 *R. S. p.* 224, § 1;) and by § 5, p. 223, vol. 3, assignments by way of security without delivery or change of possession are declared presumptively fraudulent, and conclusively so, unless shown to have been made in good faith. But the policy of this state as hitherto publicly evidenced by its several constitutions, adopting the common law by its statutes in aid thereof, and the uniform decisions of its courts in upholding them, must be held as a public and well established policy to uphold voluntary assignments in trust for the benefit of creditors whenever made in good faith for the purpose of honestly, fairly and justly appropriating and distributing all the assignor's property to the payment of the debts owing to his creditors; and tested by such public policy, the assignment is valid in this state. It is not invalid or against the public policy of this state, because not all its formalities in mode of execution, according to the provisions of chapter 348 of the laws of 1860, passed in New York, have been complied with, for the reasons: 1. That act does not declare in terms that any assignment not executed according to its provisions shall be void. The omission to record the assignment, file bond and inventories, being acts subsequent to transfer to be performed, or any act or

omission of the assignor or assignee, cannot relate back to invalidate the assignment. They only reflect on the intent and good faith of it, on delivery of the assignment and property rights of parties and creditors vested. The recording was not necessary for any purpose to be attained. (33 *Barb.* 134. 12 *Abbott's Pr. R.* 161. 39 *Barb.* 101, *and cases cited at* 102. 14 *Conn. R.* 563, 564, *explaining* 9 *Conn. R.* 497.) 2. The object of that act, as declared by its title, was "to secure to creditors a just division of the estate of debtors, who convey to assignees for the benefit of creditors," and the assignment in question as found, was made in a manner recognized every where as valid, and sufficient to secure that object, in good faith, of all the property to responsible trustees, and without any preference as to creditors. Even Massachusetts holds such assignments valid. 3. The statute in question can affect, and was designed to affect only assignments made by our own citizens or others, and within this state; the statute can have no force out of this state; its provisions could not be well complied with in case of an assignment made in a foreign state. If designed to apply to assignments made out of the state, and change the well settled rule, such intent should have been expressed. (5 *Cranch,* 289. 6 *Hill,* 526. 2 *Parsons on Contracts,* 80.) 4. Giving this statute the most extended operation claimed by the defendants, then the assignment is only such a contract as would be illegal here, and will be upheld upon the principles stated under point 2. 5. This statute no more establishes a public policy which will invalidate this assignment, than do our usury laws make one to invalidate a contract made in Wisconsin by a citizen of this state to pay twelve per cent interest for a loan of money. 6. Because the statute is only directory. (12 *Abbott's Pr. R.* 161. 3 *Barb.* 134. *Juliand* v. *Rathbone,* 39 *id.* 101, *and numerous cases cited at* 102.)

IV. It is submitted that the object of the assignment being not against, but in accordance with our public policy,

and under it the plaintiffs having in good faith taken actual possession of the property for the purpose of carrying out that object, although the written instrument is defective or defectively in form executed, such transfer and possession should be upheld. (*See cases cited under 6th subdivision of last point.*)

V. The contracts as affected by public policy are, by Abbott in his Digest, classified under heads of competition, restraint of trade, corrupt influence, consenting to debtor's discharge and war. In *Sedgwick* v. *Stanton,* (4 *Kern.* 291,) Hubbard, J. says, citing from Story's Eq. Jur. § 259 and note, "contracts illegal at common law, as being contrary to public policy, are such as injuriously affect or subvert the public interest; such contracts as by their terms or manner of performance must work some mischief, affecting the body politic." And again at page 292, "the cases where the doctrine of public policy has been commonly applied, are in respect to contracts made in restraint of trade, of marriage, those which injuriously affect the legislation or administration of justice of the state, wager contracts, and contracts affecting the public morals." See 6 *Hill,* 526, and 1 *Kern.* 438, holding that lottery contracts and dealings had in other states where the law authorized them, although concededly immoral and illegal here, will be upheld and enforced by our own courts, and that we will not, so soon after tolerating them here, be so ungracious as to refuse to uphold them as against public policy. We are situated about the same as to these assignments, always having upheld and encouraged those like this until the statute of 1860. Justice Nelson says that lottery laws are to be upheld the same as foreign laws allowing a greater rate of interest than our own statutes allow. (6 *Hill,* 529. *See Story's Confl. of Laws,* §§ 258, 259.) Story on Contracts, §§ 189–217, under chapter of "contract in violation of public policy," enumerates those in restraint of trade, in restraint of marriage, marriage brokage contracts, wagers, contracts to offend against the

obligation of laws and public duty contracts, trading with an enemy without license.

VI. Contracts relating to movables are to be construed and rendered effective according to the laws where made. (2 *Pars. on Cont.* 83.)    This is the rule unless they are positively to be performed elsewhere.    (*Story on Confl. of Laws*, § 278 to 82, *and note to latter.*)    Transfers of personal property are governed by the laws where the owner is domiciled, when made there; and if made elsewhere, then by laws of country where made.    20 *N. Y. Rep.* 112, Denio, J. says, " It is an established doctrine, not only of international law, but of the municipal laws of this country, that personal property has no locality.    It is subject to the law which governs the person of the owner, as well in respect to the disposition of it by act *inter vivos,* as to its transmission by last will and testament."    14 *Conn. R.* 555, *at* 563, 4, comments on 9 *Conn. R.* 487, and says it is confined to property which is in its nature local, and that it does not apply to property not local in its nature so far as it declares the recording is necessary; and shows the recording of foreign assignments is not required.    Again, " The foreign law furnishes the rule of decision *as to the validity of the title* to the thing claimed," and cites numerous cases.    (*Bank of Augusta* v. *Earle,* 13 *Peters,* 519.    *Holmes* v. *Remsen,* 4 *John.Ch.* 460; *see middle of page* 469.    *Burrill on Assign.* 363 *and note.    Means* v. *Hapgood,* 19 *Pick.* 106.    *Story on Confl. of Laws,* 423 *a.    Smith's Merc. Law,* 3.    *Hoyt* v. *Thompson,* 1 *Seld.* 353.    24 *N. Y. Rep.* 157.)

VII. Voluntary assignments and transfers of personal property, made in good faith for the benefit of creditors, stand upon the same footing as any other voluntary transfer or sale of personalty.    In *Holmes* v. *Remsen,* (4 *John. Ch.* 486,) the chancellor says it is a very clear proposition that such an assignment will operate on foreign debts, and preclude a subsequent attachment of them.    " We are bound to give effect to the assignment because it is equivalent to a volun-

tary act of the party over his own property, or because the property is supposed by fiction of law to be attached to his person, and to be within his domicil, or because we are bound to do so by the comity of nations." (*See also p.* 469.) In *Abraham* v. *Plestoro,* (3 *Wend.* 538,) in court of errors, on pages 548, 9, 552, 3, 555, 559, 561, 563, 4, 566, 571, 2, every member of the court concedes the proposition above stated, and elaborate discussion is had as to whether foreign assignments by operation of law or statutory assignments should not have the same effect as voluntary assignments; so in numerous other cases in this and other states. Some jurists claiming that if an insolvent or bankrupt makes, under the order in insolvency or bankruptcy, an assignment, that is his voluntary act, and therefore those assignments should stand as effective as voluntary assignments. (*See* 4 *John. Ch.* 460 ; 23 *Wend.* 87 ; *Sortwell* v. *Jewett,* 9 *Hammond's Ohio R.* 180 ; 4 *Cowen,* 312 ; 3 *Mass.* 514 ; 6 *Binn.* 353–361 ; 4 *Zabriskie,* 162 ; *Story on Conflict of Laws.* 398 *to* 402 *a; 1 Green* [*N. J.*] 329 ; 1 *H. Bl.* 690 ; 2 *Kent,* 455.) The distinction between voluntary and legal assignments is pointed out and clearly settled.

VIII. Our citizens, dealing with foreigners in foreign countries, stand here, in relation to their contracts made there, the same as foreigners, and no better. They are presumed to know, and are bound by and subject, so far as those dealings are concerned, in all their results, to the laws of that foreign country; and in this case, the defendants having contracted the debt with the assignors in Canada, must stand here with respect to this assignment the same as a creditor who was a citizen of that country would. (19 *Pick.* 105. 3 *Metc.* 207. 23 *Wend.* 101. 1 *Kern.* 362, 3. 21 *Barb.* 205.)

IX. In the Massachusetts cases cited by the appellants, and, it is believed, all the other cases holding with them, the courts have pronounced foreign assignments of personal property invalid to pass title to property situate in those states,

Ackerman *v.* Cross.

not on the ground of protection or preference to its own citizens over foreigners, or that voluntary assignments were not to be treated the same as other voluntary sales of personal property, but simply on the ground that the policy and laws of such states absolutely prohibited the making of preferences in such assignments. And most of the Massachusetts cases, it will be found, turned on other points; and what is said upon this is mere obiter. For instance; the case in 13 *Mass. Rep.* 146, was decided on the ground that the assignment was not proved valid where made. In this last case the judge cited, to sustain him, only a case where a foreign assignment in bankruptcy was held inoperative to pass title out of the country of the bankrupt. In *Blake* v. *Williams,* (6 *Pick.* 285,) the question was as to effect of a foreign assignment or commission in bankruptcy; and Parker, Ch. J. at page 206, 7, comments on 13 Mass. Rep. 146, to the effect that it was by no means intended to decide that a foreign voluntary assignment, not contravening their public policy, would be held invalid there. *Boyd* v. *Rockport S. C. Mills,* (7 *Gray,* 106,) was decided on the ground the transfer was not executed; and what is said as to the question here was not necessary. *Zipcey* v. *Thompson,* (1 *Gray,* 243,) holds the assignment invalid because against the settled public policy and direct legislation of the state. In 16 *Pick.* 571, we find a foreign assignment *without preference,* declared valid and upheld. The case 19 *Pick.* 105, also upholds such an assignment. The positive statute law of Massachusetts declares void all assignments making preferences; and so do the statutes of New Jersey; and in 1 Green, N. J. 329, the foreign assignment with preferences, is held to be inoperative to pass title to property in that state; but see 4 Zabriskie cited under next point.

X. That the assignment in question is to be held valid here, and operative to pass title to the property in question as against the attaching creditor, is established by the following cases in point: *Moore* v. *Willett,* (35 *Barb.* 663, *and cases cited.*) *Sortwell* v. *Jewett,* (9 *Hammond's Ohio Rep.* 180,)

sustained all the foregoing propositions as to foreign voluntary assignments of personalty, and held an assignment made in New York, by and to a citizen of New York, *with preferences*, in trust to pay creditors, accompanied by a deed for the same consideration and object of real estate situate in Ohio, operative and valid to convey title to the real estate, as against an attaching creditor there subsequent to the assignment. *Frazier* v. *Frederick, in supreme court of New Jersey,* (4 *Zabriskie,* 162,) holds an assignment made in Pennsylvania, valid by its laws, and not making preferences, valid and operative in New Jersey; and places these voluntary assignments on the same ground as voluntary sales of personal property. To the same effect is the case of *Hunt* v. *Lathrop,* in the supreme court of Rhode Island, (2 *Am. Law Register, N. S.* 381. *Burrill on Assignments, and cases cited on page* 372.)

XI. The same law of comity should be extended to citizens, and laws of foreign friendly governments, as to those of others of the United States, which are placed in many other respects in the same relation. (13 *Peters,* 590–592. *Ogden* v. *Saunders,* 12 *Wheat.* 529, *near bottom.* 23 *N. Y. Rep.* 396. 2 *Kernan,* 262, 3.)

*By the Court,* BACON, J. The facts in this case are mainly conceded, and admit of no complication, and being once ascertained, the principle of law applicable to them seems to me by no means difficult or recondite. The plaintiffs are the assignees of Curry, McCandlish & Field, a firm residing and doing business at Bellville, Canada West, on the 10th of June, 1861. The plaintiffs were residents of the same place, and the assignment, which was executed and delivered at Bellville, on the 10th of June, 1861, was a general one, for the benefit of creditors. The firm was insolvent, and it is conceded that the assignment was valid in Canada, and would by the courts of that province be held effectual to vest the title of the assigned property in the assignees. All the prop-

erty assigned was at Bellville, except the particular property which is the subject of this action, which at the time of the assignment was in store at Cape Vincent, having been shipped by the former owners to New York; but retained at Cape Vincent under a warehouse lien.　On the 11th of June, 1861, one of the assignors made a formal delivery thereof to the plaintiffs, and it was allowed by them to remain in the warehouse, subject to their orders and the lien existing thereon.

On the 11th of June, 1861, the defendants Denison & Wyckoff commenced a suit on a demand then held by them against Curry and others, and obtained an attachment, by virtue of which, the defendant Cross, as sheriff, seized the property, then being at Cape Vincent, and subsequently a judgment was duly rendered in that action, and upon an execution issued thereon, the property was sold and bid off by Denison & Wyckoff.　This action is brought by the plaintiffs as assignees, to recover the value, and a recovery is resisted by the defendants, upon the ground that the assignment not having been acknowledged, filed or recorded in this state, nor being in other respects in conformity with the act of 1860, it could not operate to convey property in this state, against a valid attachment of a creditor of the assignors, and a citizen of this state; and that in order to the validity of an assignment since that act, as it respects property in this state, the assignees must be residents of this state, and within the jurisdiction of its courts.

The learned referee who tried this cause held, as a conclusion of law, that the assignment was a valid instrument, and was operative to, and did pass to the plaintiffs as assignees the property in question in this suit; and that being thus invested with the title they were entitled to recover the value, for which he ordered judgment in their favor.　The soundness of this conclusion it seems to me admits of no question, and it is founded on a principle as simple, as it is almost elementary. It is expressed clearly and tersely by Judge Denio, in *Parsons* v. *Lyman,* (20 *N. Y. Rep.* 112,) as follows: "It is an estab-

Ackerman *v.* Cross..

lished doctrine, not only of international law, but of the municipal law of this country, that personal property has no locality. It is subject to the law which governs the person of the owner, as well in respect to the disposition of it by act *inter vivos*, as to its transmission by last will and testament, and by succession upon the owner dying intestate." "The principle," he adds, "no doubt has its foundation in national comity, but it is equally obligatory as a rule of decision in the courts, as a legal rule of purely domestic origin." It seems to follow very clearly from this principle, that voluntary transfers of personal property, wherever in point of fact the *situs* of the property itself may be, are controlled and regulated by the law of the owner's domicile, and if valid there to transfer a title, are valid every where else. In truth I hardly know a respectable authority — certainly there is none in this state — that questions this proposition. The only struggle in our courts has been to determine whether the rule applied to the case of a compulsory assignment, as for instance under a decree in bankruptcy pronounced by a foreign tribunal.

Story, (*Confl. of Laws*, § 411,) states this as the distinction between the two cases, when he says, the one is a voluntary conveyance, and the other is a conveyance by operation of law *in invitum*. A statutable conveyance, made under the authority of the legislature, cannot operate upon any property except that which is within its territory. "And this," he says, "makes a solid distinction between a voluntary conveyance by the owner, and an involuntary legal conveyance by mere authority of law. The former has no relation to place, the latter, on the contrary, has the strictest relation to place." And from this follows the inevitable corollary, that "a voluntary assignment by a party, according to the law of his domicile, will pass his personal estate wherever may be its locality, abroad, as well as at home." This principle is very distinctly recognized by several cases in our own courts, and among others in *Johnson* v. *Hunt* (23 *Wend.* 96,) and in *Hoyt* v.

*Thompson,* (1 *Seld.* 352,) where Paige, J. repeats the language of Story in respect to the distinction between a compulsory legal assignment and one which is voluntary, and adds, "the control of the owner of personal property has no respect to its locality. He can dispose of it wherever it may be."

An attempt was made at an early day, by Chancellor Kent, to extend the principle to the length of recognizing and enforcing the claims of foreign assignees under the English bankrupt act. He not only admitted, but insisted upon the proposition, in the broadest terms, that the succession to and disposition of personal property is regulated by the law of the owner's domicile, and he sought to extend the principle to an involuntary assignment by force of law, by considering the act as in effect the party's own, since it was in execution of laws by which he was bound, and he voluntarily committed the act which authorized the making of the assignment. (*See Holmes* v. *Remsen,* 4 *John. Ch.* 487.) This reasoning has a certain air of plausibility, but it is essentially unsound, as is shown by Story, when he says that "in the same way it might be said that a man committing a crime for which his estate is forfeited, voluntarily consents to its transfer." The principle, whether correct or not, can only apply to cases where the debtors and creditors are both residents of the same country. (*Confl. of Laws,* § 413.)

The doctrine of Chancellor Kent was dissented from in an elaborate opinion of Judge Platt, in the supreme court, in the case of *Holmes* v. *Remsen,* (20 *John.* 229,) in which he maintained the true rule to be that statutory assignments as to creditors should only operate *infra territorium.* The other judges neither concurred in nor dissented from this opinion, as the decision of the case turned entirely on another point in which they all agreed. In the case of *Abraham* v. *Plestoro,* (3 *Wend.* 538,) in the court of errors, the whole doctrine is entirely overruled, and a majority of the court united in the proposition that an assignment under the bankrupt act

of England does not operate as a legal transfer of the property of the bankrupt in this country, following in this respect the decisions of the supreme court of the United States in *Harrison* v. *Sterry*, (5 *Cranch*, 289,) and as between the several states, that of *Ogden* v. *Saunders*, (12 *Wheat.* 358.) Similar decisions have been made in other states of the union, and so preponderating is the weight of authority, that Chancellor Kent in his Commentaries, has with great candor admitted that the doctrine in this country is now established in opposition to his early opinion. (2 *Kent's Com.* 408, 3d ed.)

Cases are cited by the defendants' counsel from the courts in Massachusetts, New Jersey, Louisiana, &c. to sustain the principle that the *lex fori* in respect to the transfer of personal property prevails over the law of the owner's domicil, but it is not important to spend time in their examination, since they are not controlling authority with us, and their effect is substantially neutralized by the fact that in Maryland and Pennsylvania, and in the courts of the United States, decisions of a decidedly opposite character have been made; and however respectable the tribunals that hold this view may be, they cannot countervail what I conceive to be the well settled principle with us, that a transfer of personal property which is valid by the law of the owner's domicil will operate as a transfer to be regarded and upheld in all places. A voluntary assignment for the benefit of creditors, I need not say, stands in this respect upon the same footing, and the assignees are entitled to assert the same rights as purchasers in any other form from the original owner.

This is the principle declared by Justice Strong in *Tyler* v. *Strang*, (21 *Barb.* 198,) when the subject of the transfer was property in the state of Pennsylvania, and he held that the assignor and assignee being both citizens of this state, and the assignment executed here, both the validity and effect of the assignment, and the delivery and change of possession necessary to sustain it, depended entirely upon our laws; in other words the *lex loci contractus* governs.

*Moore* v. *Willett,* (35 *Barb.* 663,) is still more in point. It was the case of a voluntary assignment made by an insolvent debtor in North Carolina. It contained a clause not obnoxious to the laws of North Carolina, but which by the well settled law of this state would have rendered the assignment, if it had been executed here, fraudulent and void. The property assigned was a vessel then at sea on a voyage to New York. On her arrival at that port she was delivered into the possession of the plaintiffs, who were the assignees, and immediately levied upon by the defendant, as sheriff, on an execution upon a judgment against the assignor, who lived in North Carolina. Judge Ingraham, in his opinion, discusses two propositions: 1. Whether a foreign assignment can convey title to property here, so as to give it effect against a creditor here who has seized the property under an attachment or execution; and 2. Whether provisions in the assignment, good where it was executed, but rendering it void in this state, destroy its efficacy and validity here. These two propositions, it will be seen, cover the whole ground taken in this case, and the features of the two cases are very nearly identical. The decision upholds the title of the assignee in all respects, and was placed upon the principle that the assignment being valid by the law of the place where it was executed, it was good every where, and the party holding under it could assert dominion over the property conveyed, wherever it might be found.

It is true that the vessel was at the time of the execution of the assignment upon the high seas, and the court mention this as a fact adding strength to the plaintiffs' title, but it is manifest that in the light of the principle which is applied to the case, the decision would have been the same if the vessel had in point of fact been lying in the port of New York at the moment the assignment was executed.

I need hardly say that if an assignment will be upheld here which contains a provision which the policy of our laws utterly condemn, but which is saved from that condemnation

by the consideration that it is good by the law of the place of its execution, the fact that the assignment in this case did not conform to the requisition of the act of 1860, will not affect its validity in our courts. These requirements are essentially formal and modal, while the vice in the other case is far more deep and radical. It has been suggested indeed, if not held in some cases, that our statute in these respects is directory merely, and the omission of the things required by the act does not affect the validity of the assignment. It is not important to express any opinion on this point, since if the broad proposition is conceded that the assignment would have been declared void if it had been executed by a citizen of this state to assignees residing here, it does not impair the title of the plaintiffs in this suit, derived from an assignment valid and effectual by the laws of Canada, where all the parties to the assignment resided at the time of its execution.

The judgment is right and must be affirmed.

[ONONDAGA GENERAL TERM, December 22, 1863. *Allen, Mullin, Morgan* and *Bacon*, Justices.]