## Case No. 5,520.

### In re GOLDSCHMIDT.

[3 Ben. 379;[1] 3 N. B. R. 164 (Quarto, 41).]

District Court, S. D. New York. Sept. 22, 1869.

ASSIGNMENT BY BANKRUPT WITHOUT PREFERENCE—REFUSAL OF DISCHARGE.

1. A debtor made an assignment of all his property for the benefit of all his creditors, without preferences. More than ten months afterwards he filed his petition in bankruptcy, and his discharge was opposed on the ground that he had made that assignment "in contemplation of bankruptcy," "for the purpose of preventing his property from being distributed under the bankruptcy act" [of 1867 (14 Stat. 517)]. On being examined, he testified that he made the assignment in good faith, and not in contemplation of becoming a bankrupt; that he was at the time unable to pay his debts, and had suits against him; that he was advised by counsel that he had a right to make such an assignment; and that he had to make it in order to save the property for the creditors generally. *Held*, that the effect of the assignment being to hinder and delay his creditors, its execution was an act of bankruptcy, within the 39th section of the act; that the debtor executed it, therefore, in contemplation of becoming bankrupt, within the 29th section of the act; and that his evidence that he had no contemplation of becoming bankrupt, was of no weight.

[Cited in Re Freeman, Case No. 5,082; Spicer v. Ward, Id. 13,241; Re Marter, Id. 9,-143; Re Hannahs, Id. 6,032; Boese v. King, 108 U. S. 385, 2 Sup. Ct. 770.]

2. On the evidence, he made the assignment for the purpose of preventing the property from being distributed under the bankruptcy act; and that, therefore, under the 29th section of the act, a discharge must be refused.

[Cited in Re Pierce, Case No. 11,141; Globe Ins. Co. v. Cleveland Ins. Co., Id. 5,486; Re Wolfskill, Id. 17,930; Re Seeley, Id. 12,628; Re Kraft, 4 Fed. 525.]

[In the matter of Abraham Goldschmidt.]

Brown & Calvin, for bankrupt.
Charles H. Smith, for creditors.

BLATCHFORD, District Judge. In this case, the discharge of the bankrupt is opposed by creditors on a specification alleging that, since the passage of the bankruptcy act, the bankrupt has, "in contemplation of becoming bankrupt, made an assignment of all his property to David Heller, for the purpose of preventing the said property from being distributed under said act in satisfaction of his debts," being the assignment referred to in the schedules annexed to the petition of the bankrupt, as one made by

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

him on the 20th of February, 1868, assigning all his property to Heller, "for the purpose of selling and disposing of the same, and dividing the proceeds thereof share and share alike among his several creditors named in Schedule A, No. 3 and No. 5, without preference." This specification is founded on that clause of the 29th section of the act, which provides, that no discharge shall be granted to a bankrupt if he has, in contemplation of becoming bankrupt, made any assignment of any part of his property for the purpose of preventing the property from being distributed under the act in satisfaction of his debts. Three things must concur, under this provision, to warrant the refusal of a discharge: (1) There must have been an assignment of property by the bankrupt; (2) he must have made the assignment in contemplation of becoming bankrupt; (3) he must have made it for the purpose of preventing the property from being distributed under the act in satisfaction of his debts.

. That the assignment was made in this case is undisputed. It is in writing, and bears date February 19, 1868, and is executed by the assignor and the assignee, and was acknowledged by both of them on that day, and was recorded the next day. It states that the assignor "is justly indebted to sundry persons in sundry considerable sums of money, and, being unable to pay the same in full, is desirous of making a fair and equitable distribution of his property and effects among his creditors." It then assigns to Heller all the property of the assignor, in trust to sell and dispose of it, and convert it into money, and, out of the proceeds, after deducting the expenses of executing the trust, to pay all the debts of the assignor pro rata, without preference.

The next question is, whether the assignment was made by the assignor in contemplation of becoming bankrupt. What is meant by the expression, "in contemplation of becoming bankrupt," as used in this clause of the 29th section? An examination of the act, in connection with the forms, shows, that the expression, "becoming bankrupt," means, committing an act of bankruptcy. and that the expression, "in contemplation of becoming bankrupt," means, in contemplation of committing an act of bankruptcy. The act of bankruptcy, the commission of which must be contemplated, is such an act as the statute declares to be an act of bankruptcy. By section 11, the filing of a petition by a debtor, under the conditions therein prescribed, is declared to be an act of bankruptcy. By section 39, it is provided that a debtor who does any one of certain specified things, shall be deemed to have committed an act of bankruptcy. Form No. 5, being the form for "adjudication of bankruptcy upon debtor's petition," is a finding and certificate by the register that the petitioner "has become a bankrupt within the true intent and meaning of the act"—that is, that he has filed a petition, as a voluntary bankrupt, under the conditions prescribed in section 11, and in compliance with the general orders and the forms and the rules of this court. A petition by a creditor, form No. 54, avers that the debtor "did commit an act of bankruptcy." Form No. 58, which is the form for adjudication of bankruptcy on a creditor's petition, adjudges that the debtor "became bankrupt within the true intention and meaning of the act, * *. * before the filing of the said petition"—that is, that he so became bankrupt by committing the act of bankruptcy alleged in the petition, being an act the doing of which is declared by section 39 to be the commission of an act of bankruptcy. A debtor may, therefore, become bankrupt, or commit an act of bankruptcy, by filing a petition under section 11, or by doing some one of the things which is declared by section 39 to be the commission of an act of bankruptcy. The question to be determined in this case is, whether the bankrupt, when he made the assignment to Heller, contemplated filing a petition under section 11, or contemplated doing some one of the things which is declared by section 39 to be the commission of an act of bankruptcy. For, it is not necessary, in order that he should have contemplated becoming bankrupt, that he should have contemplated having a petition filed against him, and being adjudged a bankrupt thereon, provided he contemplated committing an act which is defined by section 39 to be an act of bankruptcy.

. The petition of the bankrupt in this case, in voluntary bankruptcy, under section 11, was filed on the 28th of December, 1868, ten months and eight days after the recording of the assignment to Heller. There is nothing in the evidence, or in the circumstances of the case, to induce the belief that the bankrupt, when he made the assignment, contemplated filing himself the petition which he afterwards filed, and committing the act of bankruptcy which he thus committed. But he testifies that, at the time he made the assignment, he knew he was not able to pay his creditors in full; that law suits were pending against him at that time, some being at issue; that he was advised by counsel, before he made the assignment, that he had a right to make an assignment of all his property, without preference, for the benefit of all his creditors; that he made it of his own accord, and not on the advice of his creditors in good faith, for the benefit of his creditors, without intent to defraud any creditor, and not in contemplation of becoming a bankrupt; that he did the best he could with his property for his creditors; and that he had to make the assignment in order to save the property for the creditors generally. Now, by section 39, it is provided, that a debtor who, after the passage of the act, shall make any assignment of his property with intent to delay, defraud or hinder his creditors, shall be deemed to have committed an act of bankruptcy, that

is, shall be deemed to have become bankrupt. The intent on the part of the bankrupt to delay and hinder his creditors by making the assignment, is proved in this case, as a question of fact. The actual design in his mind to so delay and hinder his creditors, is testified to by himself. For he says that, knowing that he was not able to pay his creditors in full, and suits having been brought against him by some of his creditors, and being pending, he made the assignment of his own accord, after advice by counsel, in order to save the assigned property for his creditors generally. This can mean nothing else, than that he made the assignment in order to prevent the creditors who had sued him from appropriating towards the payment of their claims the assigned property. This would be to delay and hinder such creditors. The fact that the bankrupt made the assignment, as he states, without intent to defraud any creditor, is of no consequence, provided he had the intent to delay or hinder his creditors. The language of the 39th section is, "with intent to delay, defraud, or hinder his creditors." The testimony of the bankrupt that he did not make the assignment "in contemplation of becoming a bankrupt," is entitled to no weight. What he means by that expression is not defined by him. If he means that he did not make the assignment "in contemplation of becoming bankrupt," in the sense of that expression as used in the clause of the 29th section which is under consideration, and as hereinbefore interpreted, his own testimony, as already shown, proves that he did make the assignment in contemplation of becoming bankrupt. His general negation of the language of the statute is outweighed by his testimony as to facts. If the words used by him, namely, "in contemplation of becoming a bankrupt," are intended to mean something different from the words, "in contemplation of becoming bankrupt," and to imply that what he means is, that, when he made the assignment, he did not contemplate being actually adjudged to be a bankrupt, the answer is, that it was not necessary he should have contemplated the institution of proceedings in bankruptcy against him, provided he contemplated, as he did, the commission of an act which is declared by section 39 to be an act of bankruptcy, and for which he could, under that section, be adjudged a bankrupt, at the option of a creditor, subject to the conditions prescribed in that section.

As, therefore, the bankrupt made the assignment in question with intent to delay and hinder his creditors, and thus committed an act of bankruptcy, he made it in contemplation of becoming bankrupt. The next question is, whether he made it for the purpose of preventing the assigned property from being distributed under the act in satisfaction of his debts. He avows that he knew he was not able to pay his creditors in full; that he made the assignment of his own accord under the advice of counsel, to the effect that he had a right to clothe an assignee with the power of distributing his property in satisfaction of his debts; that he thereby did the best he could with his property for his creditors; and that he had to make the assignment in order to save the property for the creditors generally. This shows an intent and a purpose on the part of the bankrupt to assume, when he was insolvent, and when he contemplated committing an act of bankruptcy, and becoming bankrupt, the distribution of his property, in satisfaction of his debts, through the agency of an assignee selected by himself. This necessarily involves the existence of a purpose to prevent the same property from being distributed under the bankruptcy act in satisfaction of the same debts. There could be no other purpose. Such purpose is not disavowed by the bankrupt in his testimony. On the contrary, his testimony, that he was advised by counsel, before he made the assignment, that he had a right to make it, can only mean that he was advised that, as against the bankruptcy act and its provisions, he had a right to make such assignment, and to provide for the distribution of his property in satisfaction of his debts by an assignee, selected by himself, and subject to regulations prescribed by himself in the assignment, and thus prevent, if the assignment should be carried out, the distribution of the same property under the bankruptcy act. All this he did in contemplation of becoming bankrupt, that is, of committing an act of bankruptcy, because of which a creditor could, subject to the conditions prescribed in the 39th section, put such property, but for such assignment, in the way of being distributed under the act, against the will of the bankrupt, in satisfaction of his debts.

The fact that the assignment in this case was one of all the bankrupt's property, and created no preferences among his creditors, makes no difference. It was as repugnant to the act as if it had assigned only a part of his property, or had created preferences. The language of the clause in the 39th section is, "any assignment" of his property, with the forbidden intent. It makes no difference what the terms or trusts of the assignment are, or how much or how little of the property of the assignor it conveys. So, the language of the clause in the 29th section is, "any * * * assignment of any part of his property," for the purpose defined. The whole includes all the parts, and any one and every one of the parts, and the terms, conditions and trusts of the assignment are of no consequence provided the forbidden purpose exists. It follows that the specification is sustained, and that a discharge must be refused.