*In re* Kraft and .others, Bankrupts.

*(District Court, S. D. New York. ——, 1880.)*

1. Bankruptcy—Fraudulent Preference.

2. Same—Books of Account.

3. Same—General Assignment.—The intent to have the debtor's estate wound up and distributed under a general assignment, by an assignee named by the debtor, constitutes an intent to prevent the property from coming to the assignee in bankruptcy, and of being distributed under the bankrupt law.

   *Platt* v. *Preston,* 19 N. B. R. 244.
   *In re Goldsmith,* 3 N. B. R. 164.
   *In re Kasson,* 18 N. B. R. 379.

In Bankruptcy.

*Jos..S. Bosworth, Jr.,* for bankrupt.

*Ralph E. Prime,* for creditors.

Choate, D. J. This is an application for the discharge of Frederick W. Kraft, one of the bankrupts. The bankrupts constituted the firm of Beaman & Kraft, and carried on the business of leather dressers down to about the fourth day of January, 1876, when Beaman absconded and Kraft executed a general assignment for the benefit of creditors, without preferences. The estate of the copartnership was distributed under that assignment, and the remaining debts are chiefly the balances of the firm debts still unpaid. The petition of

Kraft for the adjudication of the firm was filed August 10, 1878.

Of the specifications filed by the contesting creditors they now rely on three only: *First,* the transfer of certain skins to a creditor, Goodenough, shortly before the making of the general assignment, with intent to prefer him; *second,* the failure to keep proper books of account, and especially in that the bankrupts kept no cash account; and, *third,* the making of the general asssignment in contemplation of bankruptcy, and with intent to prevent the property from coming to the hands of the assignee in bankruptcy and being distributed under the bankrupt law.

1. The transaction with Goodenough was not a fraudulent preference, upon the evidence, so far as Kraft was concerned. He then believed the firm to be solvent and able to go on in business and pay all its debts.

2. The books which remained after Beaman absconded were not proper books within the meaning of the statute. But, upon the evidence, it is clearly proved that there was another book kept by him and which disappeared with him. And the evidence is, I think, sufficient to show that this book contained the cash transactions of the firm;. that it was kept by Beaman as one of the firm books; and that the entries made in it supplied what was wanting in the other books to constitute them all together proper books of account.

3. In respect to the general assignment it is insisted .on behalf of the bankrupt that it was not made in contemplation of becoming bankrupt, or for the purpose of preventing the property from coming into the hands of their assignee in bankruptcy, and of being distributed under the bankrupt law in satisfaction of their debts.

It has been too often held, in this district and circuit, that the intent to have the debtor's estate wound up and distributed under a general assignment, by an assignee named by the debtor, constitutes an intent to prevent the property from coming to the assignee in bankruptcy and of being distributed under the bankrupt law, to leave this an open question in this court. *Platt* v. *Preston,* 19 N. B. R. 244, and cases cited; *In*

*re Goldsmidt*, 3 N. B. R. 164; *In re Kasson*, 18 N. B. R. 379. It has been doubted whether it is not competent to show that the actual intent of the debtor in making the general assignment was not to have his estate wound up and distributed, but to make it subserve some temporary purpose not inconsistent with an intent to have the property afterwards pass to an assignee in bankruptcy and be distributed under the bankrupt law. *In re Seeley*, 19 N. B. R. 12. The authorities cited above are, perhaps, against the competency of any such evidence; but in the present case it is unnecessary to decide the point, because, upon the whole testimony, I think it is clear that when the bankrupt Kraft executed the general assignment he intended and expected that the estate of the copartnership would be wound up under it. That purpose is certainly strongly shown upon the face of the assignment, and neither his own testimony as to his purpose, nor the testimony in respect to his contemporaneous declarations, shows anything to the contrary. It is true that he testifies that at a meeting of the creditors after the execution of the assignment a question arose between him and his creditors as to what was to be done, and it was determined that the estate should be distributed under the assignment. I do not perceive that this alters the case. It does not appear what else anybody proposed to do. This transaction is not inconsistent with a purpose on his part, at the time of the execution of the assignment, to have its provisions carried into effect. His conversations, as testified to by other witnesses, and partially, also, as testified to by himself, show that at the time of executing the assignment, his partner had absconded, and the firm was insolvent, and that the assignment was resorted to for the purpose of distributing the estate among his creditors. Any mere use of the assignment as a temporary device is inconsistent with his conversations with Mr. Vail, the president of one of the contesting banks, and Mr. Fowler, the assignee, and Mr. Sanders, who drew the assignment.

The amendment to the bankrupt law passed July 26, 1876 which provides that a general assignment, made in good faith and without preferences, and valid according to the

local law, shall not prevent a discharge in involuntary cases, strongly confirms the views of the court above referred to and followed, as to the effect of such a general assignment in preventing a discharge in a case of voluntary bankruptcy like the present. It is immaterial that the bankrupt, before making the assignment, consulted with some of his creditors and was ·advised by them to make an assignment. So far as these opposing creditors are concerned, the evidence shows that before he consulted them he had already determined to make an assignment; nor did they do any act, by advising him or otherwise, which should preclude them from insisting on this objection to his discharge.

The sixth specification is therefore sustained. The others are overruled as not proven.

Discharge refused.