In re LOCKS.

(District Court, W. D. New York. July 20, 1900.)

BANKRUPTCY—DISCHARGE—CONCEALMENT OF ASSETS.

A bankrupt had become insolvent several years before the passage of Bankr. Act 1898, and his stock of merchandise had been sold under a judgment confessed by him in favor of a creditor, and purchased by such creditor. For a number of years the bankrupt conducted the business as agent for the purchaser, receiving a salary, after which the stock was transferred to his wife, who gave notes therefor secured by a mortgage on her separate property. At the time of the filing of the petition in bankruptcy a large part of such indebtedness had been paid, presumably from the proceeds of the business, which was conducted by the bankrupt as agent for his wife. *Held*, that such facts were insufficient to warrant the refusal of a discharge on the ground that the bankrupt was guilty of a concealment of property in failing to schedule the stock of goods as his property, where no suit had been instituted by his creditors or by the trustee to impeach the wife's title, and there was not sufficient evidence of fraud to justify the court in directing the trustee to commence such a suit.

In Bankruptcy. On application for discharge.

W. F. Bishop, for bankrupt.

John B. Stanchfield, for creditors E. A. Dunham & Co.

HAZEL, District Judge. The confirmation of the report of the referee finding in favor of the discharge of the bankrupt is opposed on the ground of various fraudulent transactions in reference to disposition of his property. It appears that in 1893 the bankrupt was engaged in the business of buying and selling clothing at retail and conducting a men's furnishing store, selling both for cash and on credit. In August, 1893, his stock of goods and merchandise was seized by the sheriff of Schuyler county and sold upon an execution issued against the bankrupt in favor of one H. Rosenberg, to whom the bankrupt had confessed judgment, and upon a chattel mortgage given by the bankrupt to William H. Wait. The judgment in favor of Rosenberg was for about $520, and the mortgage to Wait was for about $1,500. The inventory of the goods by the sheriff shows them to be worth $3,000. On sale the stock of goods and merchandise was purchased by Rosenberg and Wait for the aggregate amount of their two claims. After this sale had been consummated, the bankrupt continued to carry on the business as agent for Wait and Rosenberg. They continued for three months, until the amount of the Wait claim was paid. Thereafter the business was conducted in the name of H. Rosenberg, the bankrupt continuing to act as agent or manager. The stock was increased, and the bankrupt continued in the employ of Rosenberg at a salary of $10 per week for about five years, when the stock in trade was transferred to the wife of the bankrupt for the sum of $3,300, for which she gave her notes secured by mortgage upon certain real estate in the village of Watkins, N. Y., the title to which was in her. Two thousand dollars has since been paid upon the notes secured by the mortgage. These transactions and the attending circumstances are said by the objecting creditor to have

been transactions in fraud of the creditors of the bankrupt, and therefore the petition of the bankrupt to be discharged should be denied, and the trustee of the bankrupt directed to take proceedings to obtain possession of the property. It is urged that the wife of the bankrupt had no money of her own at the time of the sale to her; that the bankrupt was in continuous possession of the business and stock in trade since the time of his failure in August, 1893, and continued in possession after the purchase of the business by his wife; that the accumulations of the business, which at the time of the adjudication of the bankrupt amounted to about $9,000, are the accumulations and property of the bankrupt; that his failure to account therefor in his schedule of assets is concealment within the meaning of the bankruptcy act; and that the property found in his possession, to wit, the stock in trade purchased by the wife, should be administered as part of the bankrupt's estate. I have carefully examined the testimony for the purpose of ascertaining if the contention of the objecting creditor is maintainable. The acts claimed to be fraudulent were committed by the bankrupt in 1893, and continuously thereafter to the time of the filing of his petition for adjudication; that is to say, the bankrupt continued to carry on the business as agent for the judgment creditor Rosenberg, and thereafter for his wife. There is no testimony which in any manner indicates that the sheriff's sale to Rosenberg and Wait was pursuant to any fraudulent intent. The property was seized by the sheriff by virtue of an execution in the action, and was sold in accordance with law, giving to other creditors the right to bid upon the property, and thus protect their interests. In the absence of purchasers or bidders, the property was bid in and purchased by the judgment creditor and the mortgagee to protect their claims at a fair valuation. It cannot be successfully urged that the judgment confessed by the bankrupt and the chattel mortgage to Wait were preferences within the meaning of section 3, subdivision 3, of the bankruptcy act. At that time the debtor was in failing circumstances, and it was lawful for him to confess judgment to a creditor, or to prefer a creditor by assignment, or to transfer to him property for a consideration, notwithstanding other creditors were unsecured or unpaid. The limitations or restrictions placed on a debtor by section 14, subsec. 2, of the bankruptcy act must be in contemplation of bankruptcy, and not mere insolvency. Buckingham v. McLean, 13 How. 151, 14 L. Ed. 91; In re Goldschmidt, 3 Ben. 379, Fed. Cas. No. 5,520; In re Freeman, 4 Ben. 245, Fed. Cas. No. 5,082; In re Holz, 1 Nat. Bankr. N. 204; In re Stark, 1 Am. Bankr. R. 180. It appears from an examination of the testimony of the bankrupt that various of his acts in regard to the management of the affairs of the business conducted by him as agent may be viewed with suspicion, and his cautious utterances on the witness stand indicate a desire to conceal his business methods. The transfer of Rosenberg to the wife of the bankrupt may also be viewed with some degree of suspicion. Fraud may very properly be proved by circumstantial evidence and the inferences legitimately deduced therefrom. Still it must be borne in mind that the defendant is entitled to judi-

cial consideration of the proofs, and to the application of the rule that the presumptions of the law are in favor of the innocence of the person accused. Morris v. Talcott, 96 N. Y. 100–107. During the time that the business was carried on by Rosenberg the bankrupt was examined in supplementary proceedings, and in 1894 a receiver of his property was appointed. It also appears from the testimony that the wife of the bankrupt had about seven or eight hundred dollars when she married the bankrupt, and "when he was a member of Locks Bros. he gave to her money, and she would save it." Money, so saved was her separate property, to use as she saw fit. The wife gave her notes secured by mortgage upon her real estate in payment for the stock in trade, and $2,000 was thereafter paid to apply thereon. There is no testimony from which it can be inferred that the real estate mortgaged to secure the notes given by the wife in payment on stock and merchandise was the real estate of the bankrupt, or that he had contributed any money towards the purchase price. The amount paid to apply on the notes was obtained, very likely, from the profits of the business; but, as the business belonged to the wife, she had a right to use the profits of the business as she saw fit.

The cases of Knapp v. Smith, 27 N. Y. 277, and, to the same effect, Buckley v. Wells, 33 N. Y. 518, cited by counsel, strengthen the position of the bankrupt. In the case first cited a well-known doctrine is laid down that "a married woman may acquire title to real and personal property by buying the same upon credit, and no interest therein would pass to her husband. If the vendor will take the risk of payment, the transfer was perfect. Having thus obtained property, she could manage it by the agency of her husband, and hold the profits and increase to her separate estate." The two houses and lots purchased by the wife of the bankrupt were purchased with her separate estate; the money that was paid down was her separate property; and it appears that $100 was obtained from a brother, $95 she had saved, and that a purchase-money mortgage was given to secure the balance.

The creditor had the right, before the enactment of the bankruptcy law, in an equitable action within the statutory limitation, to impeach the conveyance of the real estate to the wife, as he also had the right to test the validity of the judgment confessed to Rosenberg, and the transfer five years thereafter of the business and stock in trade to the wife of the debtor. It was held under the act of 1867, and it is so held now (section 70, subsec. 4, Bankr. Act), that it becomes the duty of the trustee, should he find any property which has been fraudulently transferred by the bankrupt prior to four months from the filing the petition in bankruptcy, and within the time during which an action may be brought by the statute of limitations, to have such transfer set aside. In that case the property does not vest in the trustee until there has been an adjudication setting aside the transfer. Cookingham v. Ferguson, 8 Blatchf. 488, Fed. Cas. No. 3,182; Knowlton v. Moseley, 105 Mass. 136; Bradshaw v. Klein, 2 Biss. 20, Fed. Cas. No. 1,790; In re Grahs, 1 Am. Bankr. R. 465. In this case I am entirely unable to discover any

facts that would warrant making a direction of this character to the trustee. It is well settled that the burden of proving that a bankrupt had knowingly concealed or fraudulently transferred property is on the objecting creditor. In re Hill, Fed. Cas. No. 6,482; In re Herdic (D. C.) 1 Fed. 242. I have examined In re Welch (D. C.) 100 Fed. 65. In that case the bankrupt was in control and management of a retail business, which he alleged was the property of his wife, but it appeared that he had transferred the building and stock in trade to his wife at a time when he was threatened with the enforcement of a large judgment against him, and that the wife had no money at the time. Nor do I find In re Smith (D. C.) 100 Fed. 795, a case in point. In that case the debtor mortgaged his stock in trade to a relative. The mortgage was immediately foreclosed, and the goods bid in by a stranger, who transferred his bid to a friend of the debtor, and the latter ostensibly sold the property to the debtor's wife. The purchaser handed the purchase money to the wife, and she to the officer making the sale. Both of these cases were plainly fraudulent.

An examination of the other questions presented in opposition to the discharge of the bankrupt shows that there are not sufficient reasons for withholding the bankrupt's discharge. The report of the referee is confirmed, and an order may be entered accordingly.