Segnitz vs. Garden City Banking & Trust Co.

SEGNITZ, Assignee, Appellant, vs. GARDEN CITY BANKING & TRUST COMPANY, Respondent.

*April 28 — June 21, 1900.*

*Voluntary assignments: Bankruptcy: Title to property in another state: Filing of claim by foreign creditor: Estoppel: Corporation a "person:" Construction of statutes.*

1. A voluntary, common-law assignment for the benefit of creditors,. good in the state where made, carries title to personal property wherever situated, but where the state steps in and regulates the distribution of the assigned estate in accordance with conditions. which only the sovereign can prescribe, and the conditions so pre- scribed are such as to bring into play the essential features of a bankrupt law, the operation of the assignment will be limited to. the state where made.

2. Ch. 80a, S. & B. Ann. Stats. (providing, among other things, that a. debtor who has made a voluntary assignment under ch. 80 may become discharged from his debts as a part of the proceeding under the assignment, and that every creditor residing within or without the state, who accepts a dividend out of the assigned es- tate, or participates in any way in the proceedings, shall be bound by the order of discharge, subject to the right of appeal), gives the assignment law the character of a bankrupt law, and a deed of as- signment executed thereunder does not convey title to personal property in another state, at least as against creditors residing in such state.

3. An Illinois corporation, being indebted to a bank in that state on promissory notes and having on deposit therein money subject to. check, made an assignment for the benefit of creditors in this state. When the notes became due the bank applied the money on de- posit to their payment and filed a claim in the assignment pro- ceedings for the balance due on the notes. *Held,* that the filing of such claim was merely a recognition of the validity of the assign- ment so far as it conveyed property in this state, and did not estop. the bank from denying its extraterritorial effect in an action to. recover said deposit.

4. In view of subd. 12, sec. 4971, and subd. 2, sec. 4972, S. & B. Ann. Stats. (providing that in construing statutes "the word 'person' may be extended to bodies politic and corporate as well as to in- dividuals," and "should be extended and applied to bodies corpo-

Segnitz vs. Garden City Banking & Trust Co.

rate unless plainly inapplicable "), the provision of sec. 1702d that "any person " making a voluntary assignment for the benefit of creditors may be discharged from his debts in the assignment proceeding should be construed to include corporations.

APPEAL from an order of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Affirmed.*

Appeal by plaintiff from an order sustaining demurrer to the complaint. From the complaint, and certain stipulations and concessions added thereto, it appears that in June, 1898, the Krull & Volger Company was a corporation existing under the laws of Illinois, having its principal place of business at Milwaukee, and branch establishments at Chicago, Illinois, and Kansas City, Missouri, and on that day made a due and formal voluntary assignment in Milwaukee, in compliance with ch. 80, S. & B. Ann. Stats., to the plaintiff, *Herman Segnitz*, a citizen and resident of Wisconsin. On that day the Krull & Volger Company had on deposit, subject to check, with the defendant, a banking corporation existing under the law of Illinois and engaged in business at the city of Chicago, $1,652.39, and at the same time was indebted to that company on two promissory notes, of $1,000 each, due, one about June 15, and the other about July 15, 1898. At the opening of business on June 4th the plaintiff formally notified the defendant of the fact of such assignment, and of the claim by him, as such assignee, to the fund then on deposit. Later the defendant made application, by proper entries on its books, of said $1,652.39 to the said promissory notes. Thereafter, and about September 1st, the defendant filed with the clerk of Milwaukee circuit court, in the assignment proceedings, a claim for $347.61, being the balance of said notes remaining after the application of said deposit, which fact is set up as an estoppel of the defendant against denying either the validity of the assignment, or plaintiff's title to any of the assets of said Krull & Volger Company. The defendant has, on demand, refused to pay

said deposit fund of $1,652.39, or any part thereof, to the plaintiff, and this suit is brought by the assignee to recover that amount.

For the appellant there was a brief by *McElroy & Eschweiler*, and oral argument by *F. C. Eschweiler*. They contended, *inter alia*, that a creditor who comes into court here and seeks to take advantage of our laws must be regarded for that purpose as a resident of this state and subject to the rules of law governing a resident creditor. *Cole v. Cunningham*, 133 U. S. 107–115; *Baldwin v. Hale*, 1 Wall. 223; *Gilman v. Lockwood*, 4 Wall. 409–411; *Denny v. Bennett*, 128 U. S. 489–497. The filing of a claim by the defendant in a voluntary assignment proceeding made him a party to the same and estopped him from questioning either the voluntary assignment itself or the title of the assignee to all the assets of the assignor wherever situated. Burrell, Assignments (5th ed.), 476–479; *Littlejohn v. Turner*, 73 Wis. 113–121; *Boynton F. Co. v. Sorensen*, 80 Wis. 594–596; *Lawson v. Stacy*, 82 Wis. 303–305; *In re Gilbert*, 94 Wis. 108–115; *Keith v. Arthur*, 98 Wis. 189, 191; *Means v. Hapgood*, 19 Pick. 105; *May v. Wannemaker*, 111 Mass. 418; *Mehlhop v. Ellsworth*, 95 Iowa, 657; *Von Stein v. Trexler*, 5 Tex. Civ. App. 299; *Ansonia B. & C. Co. v. Babbitt*, 74 N. Y. 395, 404; *Groves v. Rice*, 148 N. Y. 227, 234. Such filing is a recognition of the assignment *in toto*, and the creditor cannot hold the assignment void in part and good in part. *Geisse v. Beall*, 3 Wis. 367, 399.

For the respondent there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *E. P. Vilas*.

BARDEEN, J. The complaint shows that a corporation organized under the laws of Illinois, with its principal office and place of business in this state, made a voluntary assignment for the benefit of its creditors, in this state. The question for decision is whether such assignment carried title to

the personal estate of the assignor, situate in Illinois.   The general proposition may be stated that a voluntary, common-law assignment for the benefit of creditors, good in the state where made, carries title to personal property, wherever situated.   This court has so held, and such holding is supported by the great weight of authority.   *Mowry v. Crocker*, 6 Wis. 326; *Cook v. Van Horn*, 81 Wis. 291; *Campbell v. Colorado C. & I. Co.* 9 Colo. 60; *First Nat. Bank v. Walker*, 61 Conn. 154; *Walters v. Whitlock*, 9 Fla. 86; *Miller v. Kernaghan*, 56 Ga. 155; *Coflin v. Kelling*, 83 Ky. 649; *In re Paige & S. L. Co.* 31 Minn. 136; *Askew v. La Cygne Exch. Bank*, 83 Mo. 366; *Frazier v. Fredericks*, 24 N. J. Law, 162; *Ackerman v. Cross*, 40 Barb. 465; *Noble v. Smith*, 6 R. I. 446; *Gregg v. Sloan*, 76 Va. 497; *Weider v. Maddox*, 66 Tex. 372; *Black v. Zacharie*, 3 How. 483; *Van Wyck v. Read*, 43 Fed. Rep. 716; *Means v. Hapgood*, 19 Pick. 105; *Fuller v. Steiglitz*, 27 Ohio St. 355.   In Illinois, Louisiana, and Maine, and possibly some other states, the rule is limited, and will not be allowed to prevail as against creditors of the assignor residing in those states.   *Heyer v. Alexander*, 108 Ill. 385; *Beirne v. Patton*, 17 La. 589; *Fox v. Adams*, 5 Me. 245; *Chafee v. Fourth Nat. Bank*, 71 Me. 514.   The general rule, however, is as above stated; and if the assignment in question, under the law of this state, was but a common-law, voluntary assignment, it carried title to the assignor's property in Illinois, and the demurrer was improperly sustained.

The assignment under consideration was made June 3, 1898, and the law applicable thereto may be found in ch. 80 and ch. 80*a*, S. & B. Ann. Stats.   So far as ch. 80 is concerned, it only assumes to regulate and control the manner in which such assignments shall be made and executed. Ch. 80*a*, however, added some new features, which led this court to speak of our whole system relating to voluntary assignments as an insolvent law.   *Holton v. Burton*, 78 Wis. 321; *Second Ward S. Bank v. Schranck*, 97 Wis. 250.   In

*Binder v. McDonald,* 106 Wis. 332, this court criticised these statements, and limited them to the additions made to the general assignment law by the acts of 1889, now included in ch. 80*a*.

This court has never had occasion to examine and construe the purpose and force of those features of our assignment law which enable the debtor to obtain a discharge from his debts. A very similar system in Minnesota was considered in *McClure v. Campbell,* 71 Wis. 350, and it was distinctly held that an assignment made in that state, pursuant thereto, had no extraterritorial effect. Similar statutes have been the subject of frequent discussion in other courts, and the almost uniform line of decisions is in accord with the conclusion stated. Many of the cases are cited and reviewed by the supreme court of the United States in the recent case of *Security T. Co. v. Dodd, M. & C.* 173 U. S. 624. In *Barth v. Backus,* 140 N. Y. 230, and *Townsend v. Coxe,* 151 Ill. 62, the courts of last resort in New York and Illinois had occasion to consider the law of this state, and the legal effect of an assignment thereunder; and both courts came to the conclusion that those portions of our law which enabled the assignor to obtain a discharge from his debts gave it the character of a bankrupt law, and that such an assignment was ineffectual to transfer title to property of the insolvent situate in those states. Of course, we are not bound by those decisions; but, in so far as they rest upon valid reasons and sound conclusions, they are entitled to weight.

Ch. 80, as already noted, only assumes to deal with the making and administration of common-law assignments. Prior to 1889 an insolvent debtor could only obtain a discharge from his debts by procedure under ch. 179,— an act entirely independent of the assignment statutes. This chapter provided for a petition, a schedule of all creditors, and an inventory of property; and, in a proper case, an assignment was directed. Recognizing the futility of such a course

by a debtor who had made a voluntary assignment, in 1889 the legislature adopted the provisions which have been incorporated into ch. 80a. The form of procedure was based upon the assumption that the debtor had made a voluntary assignment. Among other features, it provided that such debtor might become discharged from his debts, as a part of the proceedings under the assignment, and that every creditor, residing within or without the state, who should accept a dividend out of the assigned estate, or participated in any way in the proceedings, should be bound by the order of discharge, subject to the right of appeal. If this coercive feature of the scheme had been contained in the original assignment executed by the debtor, it would have rendered the assignment void. It became legal only by force of the statute. Thus, the way was opened to every debtor making an assignment, not only to distribute his property to his creditors, but to demand a discharge from his indebtedness as to every creditor who should come in or accept a dividend. It was, in legal effect, tacking a bankrupt law to the assignment law; and inasmuch as the distribution of the estate depends, not upon the will of the assignor, but upon the positive requirement of the lawmaking power, we can see no escape from the conclusion that in so far it becomes statutory, and not voluntary. It is only in the cases where the making of the transfer and the distribution of the assigned estate are the voluntary acts of the assignor that the law recognizes the extraterritorial effect of the deed of assignment. When the state steps in and regulates the distribution of the assigned estate in accordance with conditions which only the sovereign can prescribe, and the conditions so prescribed are such as to bring into play the essential features of a bankrupt law, the operation of the assignment will be limited to the state where made. No question of comity arises, or, at least, that rule cannot be extended to cases of this kind. We are satisfied

with the proposition that when this assignment was made the bankrupt features of our law were in force and the deed of assignment did not carry title to the personal assets of the assignor in Illinois,— at least, not as against creditors residing in that state. Such being the case, the defendant had a right, after the assignor's notes became due, to apply the money in its hands, *pro tanto*, to their satisfaction.

The fact that the defendant subsequently filed a claim for the balance due, in the assignment proceedings, cannot affect the question. The legal effect of the assignment being only to convey to the assignee the title to such assets as were within this state, the filing of a claim by the defendant only has the effect to recognize its validity to that extent. It creates no greater right in the assignee than was conveyed by his deed. We do not see how any question of estoppel can arise, unless it should arise over some question of administration of the estate actually assigned. Whether the court in which the proceedings are pending may deny the right of defendant, under the circumstances, to participate in dividends, is a question not before us.

What has been said has been based upon the assumption that the words "any person," used in sec. 1702*d*, ch. 80*a*, S. & B. Ann. Stats., may be construed to cover a corporation. This section reads as follows: "*Any person* who shall have made a voluntary assignment for the benefit of his creditors under or in pursuance of the laws of this state, may be discharged from his debts as a part of the proceedings under such assignment, upon compliance with the provisions of this act." Glancing at the following sections of the act, it seems at first as though it was not intended that it should cover corporations, but a consideration of other statutory provisions in connection with several decisions of this court relieves the question of the seeming difficulty. The right of a corporation to make a voluntary assignment is established. *Garden City B. & T. Co. v. Geilfuss*, 86 Wis.

612; *Vanderpoel v. Gorman*, 140 N. Y. 563. In the construction of statutes, it is provided by subd. 12, sec. 4971, S. & B. Ann. Stats., thus: " The word ' person ' may extend and be applied to bodies politic and corporate, as well as to individuals." Subd. 2, sec. 4972, says: " The word ' person ' should extend and be applied to bodies corporate, unless plainly inapplicable." Instances where the word "person" has been construed to include corporations can be found in the following cases: *Chippewa Valley & S. R. Co. v. C., St. P., M. & O. R. Co.* 75 Wis. 253, note; *Fadness v. Braunborg*, 73 Wis. 279; *Larson v. Aultman & T. Co.* 86 Wis. 286. In view of the statutes mentioned, and the decisions of this court thereunder, we are satisfied that there is nothing in ch. 80*a* which indicates that there was any legislative intent to make them " plainly inapplicable " to bodies corporate.

It follows, therefore, that the order appealed from is proper, and ought to be affirmed.

*By the Court.*— So ordered.