### In re F. A. HALL CO.

(District Court, D. Connecticut. March 17, 1903.)

### No. 991.

1. BANKRUPTCY—EFFECT OF ACT—SUSPENSION OF STATE INSOLVENCY LAWS.

Bankr. Act 1898 (Act July 1, 1898, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), on its passage, at once suspended and superseded all state insolvency laws, as to cases coming within its purview, whether the insolvent be a person, partnership, or corporation, and proceedings instituted thereafter under any such insolvency law by or against an insolvent subject to adjudication as a bankrupt, either voluntary or involuntary, are void.

In Bankruptcy. On review of an order of the referee directing an assignee in insolvency under the state law to turn over the estate of the bankrupt to the trustee in bankruptcy.

The following is the opinion of Referee Munn:

The F. A. Hall Company was a corporation organized under the laws of the state of Connecticut, engaged in the mercantile business at Torrington, Connecticut. On the 24th day of September, 1902, it made an assignment for the benefit °of its creditors to John Workman, of Torrington, in said district, under the insolvency laws of the state of Connecticut. The assignment was confirmed by the probate court for the district of Torrington, and the probate court thereafter began the settlement of said estate of said company as an insolvent estate under the insolvent laws of the state of Connecticut. On the 10th day of January, 1903, the said the F. A. Hall Company was adjudicated a bankrupt by the United States District Court for the District of Connecticut. The petitioner herein was appointed trustee in bankruptcy, and, after duly qualifying as such trustee, made demand upon said John Workman for all of the estate of said bankrupts. The said John Workman refused to deliver over the possession of said estate to the trustee in bankruptcy, whereupon this petition was brought, and the question as to who was entitled to the possession of said estate submitted to the District Court by the consent of all parties.

The respondent claims that as the assignment was made to him under the insolvency laws of the state of Connecticut, and as the probate court for the district of Torrington (that being the proper court under said laws) had confirmed his said appointment, and taken jurisdiction over the F. A. Hall Company and its assets, and had begun the settlement of said estate under said insolvency laws prior to the adjudication, said adjudication conferred no jurisdiction upon the United States District Court either as to the bankrupt corporation or its assets; that neither the United States District Court in bankruptcy, nor its trustee, has any right to the possession of said estate, but that said estate must be settled under the insolvency laws of the state of Connecticut by the probate court for the district of Torrington; and that he (said Workman), as trustee appointed by said probate court for the district of Torrington, is entitled to the possession of said estate of said bankrupts for the purpose of settlement and distribution among the creditors of said estate under said insolvent laws in said probate court. In short, the question, as presented, is this: Did the act of Congress, passed in 1898 (Act July 1, 1898, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), entitled "An act to establish a uniform system of bankruptcy throughout the United States," suspend the insolvency laws of this state, and give the United States District Courts exclusive jurisdiction over bankrupt estates, or have the United States District Courts in bankruptcy, under the said act of Congress, and the probate courts under the insolvency laws of this state, concurrent jurisdiction in bankrupt estates, so that whichever first gets jurisdiction of the estate shall be entitled to retain it and settle the estate under the law by virtue of which it is given jurisdiction over said estates?

The question of procedure or of comity between courts was not presented, claimed, or argued, except as set forth in the pleadings, no evidence was offered in the case, and the whole case was submitted on the pleadings, with argument, and the only question submitted is the one stated above.

Before the passage of the bankruptcy act of 1898 (30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]), the state of Connecticut had an insolvency system in force. Chapter 52, Gen. St. 1888. Substantially the same provisions are found in Chapter 23, Gen. St. 1902. These statutes provided for a written assignment of all of the property of the insolvent, to some person chosen as assignee by the insolvent, for the benefit of all the creditors, in proportion to their respective claims; such deed or assignment, to be valid, to be lodged in the office of the court of probate having jurisdiction, for certain judicial proceedings therein, of such deed or assignment, by which the assignee named in the deed was approved by the court as trustee, or a trustee was appointed by the court. Thereafter the administration of the estate was conducted by the trustee under the order of court, acting as a court of insolvency. They provided for certain allowances, benefits, and privileges to the insolvent if he filed his affidavit that he had fully complied with the provisions of the chapter. Such allowances were not to exceed $3 a week for each member

121 F.—63

of his family, and not to exceed $15 a week, in the whole, for a period of time not exceeding six months, to be fixed by the court of probate. If no reservation was made in the deed or assignment, he might have a further allowance, not exceeding $100. If the estate, upon final settlement, paid seventy per. cent. or more on claims allowed, the insolvent might be discharged by the court, with an exemption of his property for two years from all legal process founded on any claim that might have been proved against his estate, except such founded upon fraud or breach of trust. The chapter also contains a provision for the assignment of a corporation by the vote of its directors, and also contains a section providing for an involuntary insolvency upon petition of a creditor and hearing by the court, upon which it might decree the debtor to be insolvent, and appoint a trustee to take possession of, manage, and dispose of his property. "These statutes constitute, in the fullest sense, an insolvent law." Ketcham v. McNamara, 72 Conn. 711, 46 Atl. 146, 50 L. R. A. 641.

It was under the provisions of this chapter that the F. A. Hall Company made its assignment to the respondent, and the proceeding had as heretofore stated. The respondent claims that these laws are in full force; that, the probate court having assumed jurisdiction, notwithstanding the adjudication of said company as a bankrupt by the United States District Court, said probate court has full power, authority, and jurisdiction to hold possession of the estate, and to complete its settlement and distribution in the manner provided by the state law. And this is true unless these statutes were suspended by the act of Congress passed in 1898 (30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) entitled "An act to establish a uniform system of bankruptcy throughout the United States." Of the power of Congress to establish a uniform system of bankruptcy, there can be no question. That power is expressly conferred on Congress by the United States Constitution (article 1, § 8, cl. 4), and is abundantly sustained by decisions of both state and federal courts. The power granted to Congress by the Constitution gave it the power to establish a uniform system of bankruptcy for the United States. In this grant of power by the several states to Congress there was no reservation, and, under that section of the Constitution, Congress might act or refuse to act. It might establish a complete system, covering every case, or a system covering only certain classes of cases. So long as it did not act, the several states had the right to establish their own systems of insolvency or bankruptcy, and to provide laws for the carrying out of such systems; but when Congress did act, and established a system of bankruptcy, that act was the supreme law of the land as to those cases covered by it. Sturges v. Crowninshield, 4 Wheat. 122, 4 L. Ed. 529; In re Bruss-Ritter Co., 1 Am. Bankr. R. 59, 90 Fed. 651; R. H. Herron Co. v. Superior Court, 8 Am. Bankr. R. 493, 68 Pac. 814; In re Deposit & Savings Inst., Fed. Cas. No. 12,211; Mauran v. Carpet Lining Co., 6 Am. Bankr. R. 737, 50 Atl. 331.

Is this case one covered by the bankruptcy law? Section 4, subd. "b," of the act of 1898, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], provided that "any corporation engaged principally in manufacturing, trading, printing, publishing or mercantile pursuits, owing debts to the amount of $1,000 or over, may be adjudged an involuntary bankrupt upon default or an impartial trial, and shall be subject to the provisions and entitled to the benefits of this act." The F. A. Hall Company were engaged in mercantile pursuits, and therefore come within the provision of the section. Section 3, subd. 4, provided that a making of a general assignment for the benefit of creditors is an act of bankruptcy, and there are other provisions of that section which undoubtedly apply also. Clearly, then, this corporation was one that came within the purview of the bankruptcy law, and was subject to its provisions. Upon the act of 1867 (14 Stat. 517) the Supreme Court, in the cases of Hawkins' Appeal, 34 Conn. 548, and Maltbie v. Hotchkiss, 38 Conn. 80, 9 Am. Rep. 364, and Gerry's Appeal from Probate, 43 Conn. 289–299, 21 Am. Rep. 653, held "that a voluntary assignment by a debtor under the insolvent laws of this state, no proceedings having been instituted under the bankrupt act, was not void, although the United States bankrupt act was in existence, and applicable to the case, at the time of the assignment." And in the case

of Maltbie v. Hotchkiss, 38 Conn. 83, 9 Am. Rep. 364, speaking of the insolvent laws of this state: "We are not sure that any complaint was made of the insufficiency of those statutes, or of any hardship in their practical operation, that is not inherent in this kind of legislation. No demand for a bankrupt act was made upon any such ground, and we can hardly believe that Congress intended to repeal or suspend those state laws, except so far as was necessary for the accomplishment of the main object in view; and that necessity, as it seems to us, may well be limited to those cases over which the courts of the United States actually assert their jurisdiction within the time limited for that purpose. The act of Congress does not in express terms repeal the state laws. A repeal by implication, arising from the force and effect of the Constitution of the United States, and from the supremacy of the laws of Congress passed in pursuance thereof, must be limited by the terms and provisions of the act from which the implication is derived." But the court did not go so far as to say in the cases quoted above that the state court's jurisdiction was superior to the bankruptcy court. In discussing that question the court said: "If any insolvent debtor, or any creditor of such, desires that the estate shall be settled in that court, it can be done. If all the parties concerned desire that it shall be settled in the state courts, as yet, we see no good reason why that may not be done. Should a case arise in which there will be an actual conflict of jurisdiction, the state court must yield to the national. Even in this case, should the bankrupt court within the time limited assert its jurisdiction, proceedings in our own courts would be thereby superseded." Maltbie v. Hotchkiss, 38 Conn. 82, 9 Am. Rep. 364. And to the same end were the decisions of In Re Ziegenfuss, 24 N. C. 463; Reed v. Taylor, 32 Iowa, 209, 7 Am. Rep. 180. But the federal and state courts, by a great majority, under the bankruptcy law of 1867 (14 Stat. 517), held that "the passage of the bankruptcy law ipso facto suspended the state laws on the same subject, so that they could no longer operate upon persons or cases within the purview of the bankrupt act." See Shryock v. Bashore, 13 N. B. R. 481, Fed. Cas. No. 12,820, where the cases on this subject are exhaustively studied and classified. See, also, Parmenter Mfg. Co. v. Hamilton, 1 Am. Bankr. R. 41, note; 16 Am. & Eng. Ency. of Law (2d Ed.) 642.

While there is a conflict in these decisions as to whether the bankruptcy law suspended the state laws, or whether cases might proceed under the state laws until the bankruptcy law was invoked, they all conceded that when the bankruptcy law was invoked the jurisdiction of the state court yielded at once to the federal court. If the probate court had jurisdiction at all in this case, it still has it. If the bankruptcy act itself did not suspend the state insolvency law, and give the District Court exclusive jurisdiction over all cases within its purview, then the mere adjudication in bankruptcy could add nothing to the law. If the probate court had jurisdiction before the adjudication, it had it after, and will have it until the case is perfected and the proceedings ended by the distribution of the estate under the provision of the law which the probate court has assumed to act. Commonwealth v. O'Hara, 1 N. B. R. 93. It is the law itself which must determine whether the bankruptcy court has sole and exclusive jurisdiction, or whether its jurisdiction is concurrent with the probate court under the insolvency laws; and, if the probate court had jurisdiction at all, then nothing is clearer than that the adjudication of this company as a bankrupt did not suspend its jurisdiction. If the insolvency law is in force, then the bankruptcy court has no right to interfere with its proceedings. In Compton v. Jessup. 15 C. C. A. 397, 68 Fed. 263, 279, the court says: "Necessity and comity both require that where, by its officers acting under color of its orders and processes, a court has taken into its custody property of any kind, another court, though of equal and co-ordinate jurisdiction, should not be permitted either to oust the possession of the first court, or in any way to interfere with the complete control and disposition of the property for the purpose of the cause in which its action has been invoked." This principle has been laid down by the Supreme Court of the United States in a long line of cases. Hagan v. Lucas, 10 Pet. 400, 9 L. Ed. 470; Williams v. Benedict, 8 How. 107, 12 L. Ed. 1007; Freeman v. Howe, 24 How. 450, 16 L. Ed. 749; Bank v. Cal-

houn, 102 U. S. 256, 26 L. Ed. 101; Gumbel v. Pitkin, 124 U. S. 131, 8 Sup. Ct. 379, 31 L. Ed. 374; In re Tyler, 149 U. S. 191, 13 Sup. Ct. 793, 37 L. Ed. 698.

But has the probate court any jurisdiction whatever in matters of insolvency, as to those cases which come within the provisions of the bankruptcy act of 1898? If the state laws in the matter of insolvency are suspended, it has not. If they are still operative, it has. The acts which constitute an act of bankruptcy under the laws of 1867 (14 Stat. 517) and the act of 1898 (30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) are essentially different. Under the law of 1867 the assignment by the bankrupt of his property for the benefit of his creditors might be, as construed by some of the decisions, an act of bankruptcy, and was as construed by a majority of decisions. Hence the conflict of decisions. Under the bankruptcy act of 1898 there is no question an assignment by a bankrupt is an act of bankruptcy. There is also an essential difference between the last section (section 50) of the bankruptcy act of 1867 (14 Stat. 541) and the similar section (section 70) of the bankruptcy act of 1898 (30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]). Section 70, subd. "a" (30 Stat. 566 [U. S. Comp. St. 1901, p. 3452]), provides: "This act shall go into full force and effect from its passage." The remainder of the clause is simply a limitation of time as to when proceedings may be brought under it. Can there be any question as to what this language means? This act was to have full force and effect upon every case within its purview from its passage. If there be any question as to what this means, it is settled by the next clause of section 70, subd. "b" (30 Stat. 566 [U. S. Comp. St. 1901, p. 3452]). "Proceedings commenced under state insolvency laws before the passage of this act shall not be affected by it." The language of these sections carries with them the clearest implication that Congress, with full power to enact a bankruptcy law under the Constitution, and having enacted such a law, and with the full knowledge of the conflict of decisions as to the effect of the law of 1867 (14 Stat. 517) on state laws and courts, intended that clause to mean that every case within its provisions should be affected by it, by being subject to, and proceeded with under, its provisions, and by the bankruptcy courts, and that every state insolvency law covering such cases after its passage should be suspended; for the authority of Congress is paramount and exclusive, and so is the jurisdiction of the District Court thereunder. Platt v. Archer, Fed. Cas. No. 11,213; In re Deposit & Saving Inst., Fed. Cas. No. 12,211; In re Bruss-Ritter Co., 1 Am. Bankr. R. 60, 90 Fed. 651; Lea Bros. & Co. v. West, 1 Am. Bankr. R. 264, 265, 91 Fed. 237; In re Herron, 8 Am. Bankr. R. 493, 68 Pac. 814.

That the bankruptcy act of 1898 (30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) has suspended all insolvency laws of the states affecting cases within its scope and purview, and that the United States District Court has exclusive jurisdiction over all cases covered by that act, is upheld by the decisions of both the federal and state courts with almost unanimity. Parmenter Mfg. Co. v. Hamilton, 1 Am. Bankr. R. 40, 41, 51 N. E. 529; In re Bruss-Ritter Co., 1 Am. Bankr. R. 59, 90 Fed. 651; In re Gutwillig, 1 Am. Bankr. R. 81, 90 Fed. 475, approved by Circuit Court of Appeals, 1 Am. Bankr. R. 388, 34 C. C. A. 337, 92 Fed. 337; In re Etheridge Furniture Co., 1 Am. Bankr. R. 112, 115, 92 Fed. 329; In re Rouse-Hazard Co., 1 Am. Bankr. R. 234-240, 91 Fed. 96; In re McKee, 1 Am. Bankr. R. 313; Blake, Moffitt & Towne v. Valentine Co., 1 Am. Bankr. R. 372-374, 89 Fed. 691; In re Curtiss, 1 Am. Bankr. R. 440, 91 Fed. 739; Davis v. Bohle, 1 Am. Bankr. R. 412, 34 C. C. A. 372, 92 Fed. 325; In re Houston, 2 Am. Bankr. R. 110, 94 Fed. 119; E. C. Westcott Co. v. Berry, 4 Am. Bankr. R. 266, 45 Atl. 352; Mauran v. Carpet Lining Co., 6 Am. Bankr. R. 737, 50 Atl. 331; Carling v. Seymour Co., 8 Am. Bankr. R. 29-37, 114 Fed. 483; In re Storck Lumber Co., 8 Am. Bankr. R. 87, 88, 114 Fed. 360; Littlefield v. Gray, 8 Am. Bankr. R. 409, 52 Atl. 925; Herron Co. v. Superior Court, 8 Am. Bankr. R. 492, 493, 68 Pac. 814. See, also, Ketchum v. McNamara, 72 Conn. 707-713, 46 Atl. 146, 50 L. R. A. 641. And these decisions are abundantly supported by the authority of Sturges v. Crowninshield, 4 Wheat. 396, 4 L. Ed. 529; Ex parte Eames, Fed. Cas. No. 4,237; Thornhill v. Bank of Louisiana, Fed. Cas. No. 13,992.

If, then, the insolvency laws are suspended, what title has the respondent?

In the case of Ketchum v. McNamara, quoted above, speaking of the title by assignment, similar to that under which the respondent makes his claim, the court says the insolvent laws "make the title under a general assignment executed by an insolvent debtor in trust for the benefit of all his creditors, which is lodged for record in the court of probate, only an inchoate one. To perfect it requires a judgment of confirmation from that court." If the laws under which this confirmation has been made by the probate court are suspended, then the confirmation of the probate court has added nothing to the respondent's title. His title is still inchoate. But it is claimed that, because the bankruptcy act of 1898 (Act July 1, 1898, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) provides no way for the corporation itself to petition for an adjudication as a bankrupt, therefore the law does not apply to it until it has been invoked by proper proceedings by petition to the bankruptcy court, and that up to that point the probate court has jurisdiction. The bankruptcy court has two purposes: (1) The equitable distribution of the assets of the bankrupt among the creditors according to the provisions of the bankruptcy law; (2) the discharge of the bankrupt. In the cases of individuals or partnerships the bankrupts themselves or their creditors may apply to the court for an adjudication—the bankrupts, that they may obtain a discharge by having their estates administered in conformity with the bankruptcy law; the creditors, that an equitable distribution of the assets of the bankrupt may be had under the law. The main purpose of the law is the collection and distribution of the assets. The discharge is an incident to, but not a part of, the bankruptcy proceedings, as to such distribution. In the case of a corporation there can be no discharge. The corporation ends its existence, but its stockholders cannot be discharged, and, if there is no liability, there is no need of a discharge; and therefore the creditors alone are interested to procure the adjudication of the corporation as a bankrupt, to the end that an equitable distribution of the assets may be had under the law; and as to corporations the law has no other purpose. Buchanan v. Smith, 16 Wall. 27, 21 L. Ed. 280; Platt v. Archer, Fed. Cas. No. 11,213; In re Independent Ins. Co., Fed. Cas. No. 7,017. And to escape the danger which might arise from allowing the directors of a corporation to at any time, and for any purpose, petition for an adjudication of it as a bankrupt, Congress has seen fit by the act to limit to those parties to petition for the adjudication to whom alone the benefit from the adjudication must come; and, when either or both parties come under the provisions of the bankruptcy law, there its jurisdiction is exclusive, and there the state laws are suspended. Authorities quoted supra. Any other construction of the bankruptcy law creating a uniform system of bankruptcy would make that system a farce; creating conflict of laws and of jurisdictions, entailing great expense, and resulting in hopeless confusion. "It was not the intention of the framers of the Constitution, or of Congress when it enacted the bankruptcy act, to have in existence two distinct and divers systems, affecting the same persons, property, and rights, and leaving it to the option of the debtor to elect one or the other at his pleasure." In re Independent Ins. Co., Fed. Cas. No. 7,017; Griswold v. Pratt, 9 Metc. 23. As the court said in the case of Ketchum v. McNamara, in deciding that case: "Any different construction of the acts of Congress would often lead to frittering away insolvent estates in legal expenses. One creditor would resort to the state insolvent court. Another, later, would institute bankruptcy proceedings in the District Court of the United States. Costs would accrue in each tribunal, and in suits brought under the orders of each. Creditors proving claims in the state court would have to present them again in that of the United States, and yet the proceedings there, if taken more than four months after the act of bankruptcy, might result in nothing but a barren decree, adjudicating the debtor, indeed, a bankrupt, but affording no means of reclaiming property which he had previously made way with, or placed in the hands of a trustee in insolvency." Littlefield v. Gray, 8 Am. Bankr. R. 409, 52 Atl. 925; In re Storck Lumber Co., 8 Am. Bankr. R. 88, 114 Fed. 360.

As the respondent is not an assignee for value (Bryan v. Bernheimer, 5 Am. Bankr. R. 627, 21 Sup. Ct. 557, 45 L. Ed. 814), and as he has acquired no title to the property of the bankrupt in his possession, because the law under

which he obtained such assignment has been suspended, he is not entitled to the possession of the bankrupt company's assets for any purpose, and as the probate court for the district of Torrington has no jurisdiction of either the bankrupt corporation or its assets, because the law under which it assumed to act has been suspended, therefore the petitioner is entitled to the immediate possession of all of the assets of said bankrupt estate, that they may be administered by the bankruptcy court under the provisions of the bankruptcy law.

The respondent is ordered to turn over to the trustee in bankruptcy all of the estate and assets of the bankrupt corporation.

W. W. Bierce, in pro. per.
S. A. Herman, for respondent.

PLATT, District Judge. The Connecticut statutes to be found in chapter 23 of the Revision of 1902 provide a system which is, without question, an insolvent law. It is also clear that the act of Congress approved July 1, 1898 (30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]) establishes a uniform system of bankruptcy throughout the United States; that, by its terms, it went into full force and effect upon its passage, and, ipso facto, at once suspended and superseded all state insolvent laws. Whether it cuts any deeper, it is unnecessary to inquire at the present juncture. It is not important that by an express provision of the bankruptcy act a corporation is excepted from the category of those who are permitted to enjoy its privileges as voluntary bankrupts. A way is provided by which the District Courts can and do acquire and retain jurisdiction of the property which before the passage of the act could and would have been administered by the probate courts.

The order issued by the referee on March 6, 1903, was lawful, and is sustained. Let an order of like effect issue from the court.