POBRESLO, Plaintiff and Respondent, vs. JOSEPH M. BOYD COMPANY and another, Defendants, KARN and others, Garnishees, Appellants.[1]

*April 8—May 10, 1932.*

---

[1] This and the two following cases (*post*, pp. 37 and 38) by direction of the court were withheld from publication in their regular order pending an appeal herein to the supreme court of the United States, which affirmed the judgment herein on January 9, 1933. See 287 U. S. 518, 53 Sup. Ct. 262.

22

For the appellants there was a brief by *Bagley, Spohn, Ross & Stevens* of Madison, and oral argument by *William H. Spohn.*

For the respondent there was a brief by *Olin & Butler,* and oral argument by *Clifford G. Mathys,* all of Madison.

NELSON, J. The plaintiff contends that the assignment herein is wholly void and inoperative because the assignees took immediate possession of the property and assets of the company without furnishing a bond as required by sec. 128.06, Stats., because the giving of the three separate bonds was not in compliance with said section for the reason that the assets of the company greatly exceeded the sum of $30,000; because the assets of the company at no time were ascertained by the oath of witnesses and of the assignor as required by sec. 128.06; because neither the said .

assignment nor a full and true copy thereof was at any time delivered to the county judge or a court commissioner; because the assignees did not, in the presence of the county judge or court commissioner, indorse upon the assignment their consent to take upon themselves the faithful discharge of the duties specified therein; because they did not, within twenty days after the execution of the assignment, make and file, in the office of the clerk of the circuit court for Dane county, an inventory of the assets and a list of the creditors of the company as required by sec. 128.13; and finally, because neither the said court nor the said trustees had jurisdiction or authority to administer the assets of the company because such jurisdiction is in conflict with the provisions of the federal Bankruptcy Act.

It appears that the three separate bonds were executed and filed pursuant to the order of the court, and that in lieu of an inventory of assets and a list of creditors a report of the company, by certified public accountants, was filed.

Various contentions are made by the parties in the carefully prepared briefs submitted by them, but in the view we take of this case but two questions require determination.

1. May the provisions of ch. 128, which pertinently relate to voluntary assignments for the benefit of creditors, be severed from the other provisions of said chapter which concededly amount to insolvency proceedings, in that they provide for the discharge of insolvent debtors?

2. If the provisions of ch. 128 regulating voluntary assignments for the benefit of creditors may be severed from the other provisions of said chapter, then are such provisions relating to such assignments for the benefit of creditors suspended so long as the federal Bankruptcy Act shall be in force and effect, because in conflict therewith?

A careful reconsideration and review of the history of our statutes regulating voluntary assignments for the benefit of creditors and those relating to insolvency proceedings

leads to the same conclusion reached in *Voluntary Assignment of Tarnowski*, 191 Wis. 279, 210 N. W. 836. In that case the development of our laws relating to assignments for the benefit of creditors as well as those relating to our insolvency proceedings was carefully reviewed. In that case it was contended that our statutory regulations relating to voluntary assignments for the benefit of creditors were separate and distinct from the provisions of our statutes providing for the discharge of insolvent debtors from their debts. The following cases were cited to support such contention: *Binder v. McDonald,* 106 Wis. 332, 82 N. W. 156; *Segnitz v. Garden City B. & T. Co.* 107 Wis. 171, 83 N. W. 327; *Duryea v. Muse,* 117 Wis. 399, 94 N. W. 365. After reviewing the several enactments leading up to the then existing law, the court, speaking through Mr. Justice OWEN, said (p. 286): "It follows, therefore, that the features of our voluntary assignment act are separate and distinct from the discharge features first enacted as ch. 385, Laws of 1889."

A careful consideration of all of the acts of the legislature, which are now incorporated into ch. 128 of the Statutes, reveals the clear intention of the legislature to provide for two separate and distinct proceedings, one relating to assignments for the benefit of creditors and the other relating to the discharge of insolvent debtors. In view of the recent review by this court of the several enactments leading up to ch. 128 as it now exists, we content ourselves by referring to the opinion in the *Tarnowski Case.* There exists in our minds no question as to the plain duty of this court to construe the several provisions of ch. 128 relating to assignments for the benefit of creditors as separate and distinct from the other provisions of said chapter relating to the discharge of insolvent debtors.

The question now arises as to whether the federal Bankruptcy Act operates to suspend the provisions of ch. 128 relating to assignments for the benefit of creditors. No

doubt can longer exist that all state insolvency laws which provide for the discharge of insolvent debtors are suspended during the existence of the federal Bankruptcy Act. If a state law is an insolvency law, the authorities are all to the effect that such law is suspended and wholly superseded by the federal Bankruptcy Act.

In the *Tarnowski Case* it was held that the discharge features of our law are suspended by the federal Bankruptcy Act, but that the provisions regulating voluntary assignments for the benefit of creditors do not contravene the federal Bankruptcy Act and are still in force. The plaintiff, however, contends that the decision in the *Tarnowski Case* should be considered overruled by *International Shoe Co. v. Pinkus,* 278 U. S. 261, 49 Sup. Ct. 108. The plaintiff contends that the following language is amply broad to cover state laws regulating assignments for the benefit of creditors:

"In respect of bankruptcies the intention of Congress is plain. The national purpose to establish uniformity necessarily excludes state regulation. It is apparent, without comparison in detail of the provisions of the Bankruptcy Act with those of the Arkansas statute, that intolerable inconsistencies and confusion would result if that insolvency law be given effect while the national act is in force. Congress did not intend to give insolvent debtors seeking discharge, or their creditors seeking to collect claims, choice between the relief provided by the Bankruptcy Act and that specified in state insolvency laws. States may not pass or enforce laws to interfere with or complement the Bankruptcy Act or to provide additional or auxiliary regulations. *Prigg v. Pennsylvania,* 16 Pet. 539, 617, 618; *Northern Pac. R. Co. v. Washington,* 222 U. S. 370, 378 *et seq.,* 32 Sup. Ct. 160; *St. Louis, Iron Mt. & S. R. Co. v. Edwards,* 227 U. S. 265, 33 Sup. Ct. 262; *Erie R. Co. v. New York,* 233 U. S. 671, 681 *et seq.,* 34 Sup. Ct. 756; *New York Cent. R. Co. v. Winfield,* 244 U. S. 147, 37 Sup. Ct. 546; *Erie R. Co. v. Winfield,* 244 U. S. 170, 37 Sup. Ct. 556; *Oregon-Washington Co. v. Washington,* 270 U. S. 87, 101, 46 Sup. Ct. 279."

This language, considered separately and apart from the opinion in which it appears, might be considered sufficiently broad (although it quite clearly relates to insolvency proceedings and to involuntary proceedings commenced by creditors against insolvent debtors) to justify the conclusion that any proceeding which provided for the ratable distribution of property of insolvents among creditors is within the field entered by Congress when it passed the Bankruptcy Act. Such a conclusion, however, is not justified when prior decisions of the United States supreme court are given consideration. In *Mayer v. Hellman,* 91 U. S. 496, which involved an assignment for the benefit of creditors under the laws of the state of Ohio and in which the main question involved was whether an adjudication in bankruptcy had the effect of suspending the further operation of the state assignment laws, and in which it was specifically and earnestly contended that such law was an insolvent act even though it did not purport to discharge the debtor from paying his debts, it was said by Mr. Justice FIELD, speaking for the court (p. 502) :

"In the argument of the counsel of the defendant in error, the position is taken that the Bankruptcy Act suspends the operation of the act of Ohio regulating the mode of administering assignments for the benefit of creditors, treating the latter as an insolvent law of the state. The answer is that that statute of Ohio is not an insolvent law in any proper sense of the term. It does not compel, or in terms even authorize, assignments: it assumes that such instruments were conveyances previously known, and only prescribes a mode by which the trust created shall be enforced. It provides for the security of the creditors by exacting a bond from the trustees for the discharge of their duties ; it requires them to file statements showing what they have done with the property ; and affords in various ways the means of compelling them to carry out the purposes of the conveyance. There is nothing in the act resembling an insolvent law. It does not discharge the insolvent from arrest or imprisonment ; it leaves his after-acquired property liable to his creditors precisely as though no assignment had been made.

The provisions for enforcing the trust are substantially such as a court of chancery would apply in the absence of any statutory provision. The assignment in this case must therefore be regarded as though the statute of Ohio to which reference is made had no existence. There is an insolvent law in that state; but the assignment in question was not made in pursuance of any of its provisions. The position, therefore, of counsel, that the Bankruptcy Law of Congress suspends all proceedings under the insolvent law of the state, has no application.

"The assignment in this case being in our judgment valid and binding, there was no property in the hands of the plaintiffs in error which the assignee in bankruptcy could claim. The assignment to them divested the insolvents of all proprietary rights they held in the property described in the conveyance. They could not have maintained any action either for the personalty or realty. There did, indeed, remain to them an equitable right to have paid over to them any remainder after the claims of all the creditors were satisfied. If a contingency should ever arise for the assertion of this right, the assignee in bankruptcy may perhaps have a claim for such remainder, to be applied to the payment of creditors not protected by the assignment, and whose demands have been created subsequent to that instrument. Of this possibility we have no occasion to speak now."

Later on in *Boese v. King*, 108 U. S. 379, 2 Sup. Ct. 765, which involved a general assignment for the benefit of creditors made under the laws of the state of New Jersey, which provided for the administration of the assets of debtors who made assignments of all of their assets to trustees for creditors, and for their discharge from liabilities to creditors who shared in the distribution, it was held that the New Jersey statute was inoperative in so far as it provided for the discharge of the debtor. It was held by a divided court as follows (p. 385):

"Undoubtedly the local statute was, from the date of the passage of the Bankruptcy Act, inoperative in so far as it provided for the discharge of the debtor from future liability to creditors who came in under the assignment and claimed

to participate in the distribution of the proceeds of the assigned property. It is equally clear, we think, that the assignment by Locke of his entire property to be disposed of as prescribed by the statute of New Jersey, and therefore independently of the bankruptcy court, constituted, itself, an act of bankruptcy, for which, upon the petition of a creditor filed in proper time, Locke could have been adjudged a bankrupt, and the property wrested from his assignees for administration in the bankruptcy court. *In re Burt*, 1 Dillon, 439, 440; *In re Goldschmidt*, 3 Nat. Bankr. Reg. 164; *Matter of Smith*, 4 Nat. Bankr. Reg. 377. The claim of Pickhardt and Kutroff existed at the time of the assignment. The way was therefore open for them, by timely action, to secure the control and management of the assigned property by that court for the equal benefit of all the creditors of Locke. But they elected to lie by until after the expiration of the time within which the assignment could be attacked under the provisions of the Bankruptcy Act; and now seek, by this suit in the name of the plaintiff in error, to secure an advantage or preference over all others; this, notwithstanding the assignment was made without any intent to hinder, delay, or defraud creditors. In order to obtain that advantage or preference, the plaintiff in error relies on the paramount force of the Bankruptcy Act, the primary object of which, as this court has frequently announced, was to secure equality among the creditors of a bankrupt. *Mayer v. Hellman*, 91 U. S. 496, 501; *Reed v. McIntyre*, 98 U. S. 507, 509; *Buchanan v. Smith*, 16 Wall. 277. It can hardly be that the court is obliged to lend its aid to those who, neglecting or refusing to avail themselves of the provisions of the act of Congress, seek to accomplish ends inconsistent with that equality among creditors which those provisions were designed to secure. If it be assumed, for the purposes of this case, that the statute of New Jersey was, as to each and all of its provisions, suspended when the Bankruptcy Act of 1867 was passed, it does not follow that the assignment by Locke was ineffectual for every purpose. Certainly, that instrument was sufficient to pass the title from Locke to his assignees. It was good as between them, at least until Locke, in some appropriate mode or by some proper proceedings, manifested a right to have it set aside or canceled upon the ground of a mutual mistake in supposing that

the local statute of 1846 was operative. And in the absence of proceedings in the bankruptcy court impeaching the assignment, and so long as Locke did not object, the assignees had authority to sell the property and distribute the proceeds among all the creditors, disregarding so much of the deed of assignment as required the assignees, in the distribution of the proceeds, to conform to the local statute."

Still later on, in *Stellwagen v. Clum,* 245 U. S. 605, 38 Sup. Ct. 215, *Mayer v. Hellman,* 91 U. S. 496, was referred to, apparently with full approval, the court quoting at length from that case, and further saying (p. 617) :

"The federal system of bankruptcy is designed not only to distribute the property of the debtor, not by law exempted, fairly and equally among his creditors, but, as a main purpose of the act, intends to aid the unfortunate debtor by giving him a fresh start in life, free from debts, except of a certain character, after the property which he owned at the time of bankruptcy has been administered for the benefit of creditors. Our decisions lay great stress upon this feature of the law—as one not only of private but of great public interest in that it secures to the unfortunate debtor, who surrenders his property for distribution, a new opportunity in life. *Neal v. Clark,* 95 U. S. 704, 709; *Traer v. Clews,* 115 U. S. 528, 541, 6 Sup. Ct. 155; *Hanover Nat. Bank v. Moyses,* 186 U. S. 181, 192, 22 Sup. Ct. 857; *Wetmore v. Markoe,* 196 U. S. 68, 77, 25 Sup. Ct. 172; *Burlingham v. Crouse,* 228 U. S. 459, 473, 33 Sup. Ct. 564. This feature of the bankruptcy law is wholly wanting in the Ohio statutes under consideration. Indeed, there is not now, any more than when *Mayer v. Hellman, supra,* was decided, any attempt in the Ohio laws to provide for the discharge of the debtor from his existing debts."

These decisions of the United States supreme court seem squarely to hold that laws which merely regulate assignments for the benefit of creditors are not insolvency laws and are therefore not in conflict with the federal Bankruptcy Act.

It is, of course, clear that the provisions of the federal act, ch. 3, sec. 3a, sub. 4, make a general assignment for the benefit of creditors an act of bankruptcy. No authority need

be cited to the point that when an assignment for the benefit of creditors is made, all proceedings in the state court may be superseded by the federal court if a petition in bankruptcy is filed within four months from such act of bankruptcy.

But the plaintiff earnestly contends that the holdings in the three United States supreme court cases just reviewed must be considered overruled by *International Shoe Co. v. Pinkus, supra.* A careful reading of that decision impels the conclusion that plaintiff's contention is unsound. That case involved proceedings under an Arkansas statute which provided for the commencement of a suit in the chancery court by the insolvent, praying to be so adjudged, and for the appointment of a receiver to take and distribute his property as directed by that statute. The plaintiff therein was adjudged insolvent, a receiver was appointed, who was directed to take the property of the insolvent and liquidate it, and creditors were directed to make proof of their claims "with the necessary stipulation that they will participate in the proceeds in full satisfaction of their demands." This statute was held by the court to be an insolvency law, the court saying (p. 264):

"The Arkansas statute is an insolvency law. It is so designated in its title (Acts of Arkansas, 1897) and in the revision (ch. 93, *supra*). The supreme court of the state treats it as such. *Hickman v. Parlin-Orendorff Co.* 88 Ark. 519, 115 S. W. 371; *Baxter County Bank v. Copeland,* 114 Ark. 316, 322, 169 S. W. 1180; *Morgan v. State,* 154 Ark. 273, 279, 281, 242 S. W. 384; this case [*International Shoe Co. v. Pinkus*] 173 Ark. 316, 292 S. W. 996; *Friedman & Sons v. Hogins,* 175 Ark. 599, 299 S. W. 997. It provides for surrender by the insolvent of all his unexempt property (§ 5885) to be liquidated by a trustee for the payment of debts under the direction of the court. It classifies creditors, prescribes the order of payment of their claims, and gives preference to those fully discharging the debtor in consideration of *pro rata* distribution (§ 5888). *Mayer v. Hellman,*

91 U. S. 496, 502; *Stellwagen v. Clum,* 245 U. S. 605, 38 Sup. Ct. 215; *Segnitz v. Garden City B. & T. Co.* 107 Wis. 171, 83 N. W. 327; *In re Weedman Stave Co.* 199 Fed. 948, and cases cited."

In that case *Mayer v. Hellman, supra, Stellwagen v. Clum, supra,* and *Boese v. King, supra,* were all cited with no intimation that the doctrines stated therein were not sound. In the very recent case of *Straton v. New,* 283 U. S. 318, 51 Sup. Ct. 465, the three cases just mentioned were cited in the opinion with no intimation that they were overruled. Referring to *Stellwagen v. Clum, supra,* it was said (p. 327) :

"It was pointed out in *Stellwagen v. Clum, supra,* that state laws which provide for sale and distribution of a debtor's property may not amount to insolvency laws; and it was there held that such laws, if not inconsistent with the administration of the Bankruptcy Act, are available to litigants. Appellees must therefore show that the statutory action of the state court is, in fact, an insolvency proceeding. The certificate states no facts which lead to such a conclusion, nor does it so denominate the creditors' suit. Reference to the statutes of West Virginia, of which we take judicial notice, demonstrates that it is not in that category."

It is inconceivable that so eminent a court would intend to overrule three of its former decisions without specifically so stating. The intention of that court to overrule former decisions is generally expressed by apt and unambiguous language. There is nothing in the *Pinkus* or *Straton Cases* which justifies the contention that the former decisions of that court reviewed herein were intended to be overruled.

Until the supreme court of the United States clearly manifests its intent to overrule its former decisions, by holding that state statutes regulating voluntary assignments for the benefit of creditors are suspended by the federal Bankruptcy Act, we are not disposed to hold that such regulatory laws conflict with the federal Bankruptcy Act, or that proceedings thereunder may not be taken and carried through, unless

superseded by properly, and in a timely manner, invoking the jurisdiction of a bankruptcy court. We perceive in the regulatory provisions of ch. 128, Stats., relating to voluntary assignments for the benefit of creditors, many provisions which operate to the benefit of both debtors and creditors. To strike down voluntary assignments for the benefit of creditors would be to destroy ancient, expeditious, and well recognized proceedings which have proved of great value not only to insolvent debtors, to debtors not actually insolvent but in financial distress, and to creditors. We have no thought or intention of questioning the right of Congress to occupy exclusively the bankruptcy field, but we fail to find any provision of the Bankruptcy Act, or any decision of the United States supreme court construing it, which forbids voluntary assignments for the benefit of creditors when not superseded by bankruptcy proceedings.

But the plaintiff further contends that, even assuming that our assignment laws are not suspended by the federal Bankruptcy Act, the assignment herein is void because the assignees took possession of the assets before giving proper bond, because no adequate bond was ever given, because no appraisal was made and filed, and because no inventory was furnished. It is conceded that the provisions of ch. 128, in the respects mentioned, were not complied with. The plaintiff contends that non-compliance with the statute in the respects mentioned rendered the assignment absolutely void. Under the law as it existed prior to the enactment of ch. 334 of the Laws of 1897, the contentions of the plaintiff would be absolutely sound. However, by said chapter there was added to sec. 128.06, Stats., the following plain and specific language:

"No creditor shall, in any case where a debtor has made or attempted to make an assignment for the benefit of creditors, or in case of insolvency of any debtor by attachment, garnishment or otherwise, obtain priority over other creditors upon such assignment being for any reason adjudged

void, or in consequence of any sale, lien or security being adjudged void under the provisions of this act. And in all such cases the property of such insolvent debtor shall be administered for the ratable benefit of all creditors of such insolvent debtor under the direction of the court, by the assignee or by any receiver of said property and estate, appointed as hereinafter provided."

In *Gilbert Paper Co. v. Whiting Paper Co.* 123 Wis. 472, 102 N. W. 20, the above language of ch. 334, Laws of 1897, first came before this court. After referring to the rules of former cases and to the statute itself, this court, speaking through Mr. Justice DODGE, said (p. 478) :

"We can entertain no doubt that this legislation was aimed directly at the rule laid down in *Winner v. Hoyt,* 66 Wis. 227, 28 N. W. 380, and following cases, that property attempted to be conveyed by a void voluntary assignment could be seized by any individual creditor by attachment or garnishment. Indeed, its words are too plain to invite or permit attempt to construe it upon that subject. We can but enforce it."

See, also, *Plewa v. St. Josaphat's Congregation,* 153 Wis. 276, 141 N. W. 267, and the recent case of *Mayfield Woolen Mills v. Goodrich & Martineau Co.* 189 Wis. 406, 207 N. W. 954, in which the language of Mr. Justice DODGE was quoted with complete approval.

The plaintiff further contends that the amended assignment herein cannot be sustained as a common-law assignment. We need give no consideration to such contention for the reason that the assignment herein was, in any event, an attempt to make an assignment for the benefit of creditors. Of this there can be no doubt. The plaintiff's remedy, therefore, was that afforded by sec. 128.06, Stats., as pointed out in *Mayfield Woolen Mills v. Goodrich & Martineau Co., supra,* p. 412.

The plaintiff has cited numerous cases found in the Federal Reporter, and has quoted extensively therefrom. These quotations considered by themselves, independently of the

facts involved, might support the conclusion that discharge provisions found in the ordinary insolvency law are not essentials of a bankruptcy law, and that a state law which provides for the distribution of the assets of an insolvent debtor among his creditors, even though it has no discharge provision, is nevertheless suspended by the bankruptcy law. We have examined with great care the many decisions cited and conclude that they do not support the contention. What they do hold is that an assignment for the benefit of creditors is an act of bankruptcy, and when thereafter the jurisdiction of a bankruptcy court is properly and in a timely manner invoked, all proceedings in the state courts, pursuant to voluntary assignments, are superseded. See particularly, *In re Smith*, 92 Fed. 135; *In re Storck Lumber Co.* 114 Fed. 360; *In re F. A. Hall Co.* 121 Fed. 992; *In re Salmon*, 143 Fed. 395.

We have no quarrel with the holdings in these cases.

We conclude, therefore, that the provisions of ch. 128 relating to voluntary assignments for the benefit of creditors are properly severable from the remaining sections of said chapter; that so severed they are not in conflict with the federal Bankruptcy Act; that an assignment for the benefit of creditors is an act of bankruptcy and all proceedings in the state court might be superseded by the federal Bankruptcy Act when the jurisdiction of the federal court is properly and in a timely manner invoked; that ch. 334 of the Laws of 1897 constitutes a valid enactment and barred the plaintiff herein from bringing a garnishment action against the assignees, even though the assignment would otherwise be void but for such saving clause. The judgment of the circuit court must, for the reasons stated, be reversed.

*By the Court.*—Judgment reversed, with directions to set aside the judgment herein and to dismiss the garnishee action.